The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Hoag and the briefs and oral arguments before the Full Commission. The appealing party has shown good ground to reconsider the evidence. The Full Commission reverse the Deputy Commissioner's Opinion and Award with regard to the providence of the Form 24 approved in this case as well as to the continuing temporary total disability compensation and enter the following Opinion and Award.
* * * * * * * * * * * * * * * * * *
The Full Commission find as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employer-employee relationship existed between plaintiff and defendant-employer at all relevant times.
3. The carrier on the risk is CIGNA/INA.
4. Plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer on October 8, 1990. Defendants paid temporary total disability to plaintiff from October 9, 1990 to November 3, 1992.
5. Temporary total disability payments were stopped by order of the Industrial Commission pursuant to a Form 24 application of defendants which was approved on November 3, 1992.
6. The average weekly wage of plaintiff at the time of his compensable injury was $438.02 which yields a compensation rate of $292.01.
7. The medical records of Dr. Tomaszek (14 pp.) and Dr. Whitehurst (10 pp.) were stipulated into the record.
* * * * * * * * * * * * * * * * * *
The Full Commission reject the findings of fact found by the Deputy Commissioner and make their own findings as follows:
FINDINGS OF FACT
1. Plaintiff is fifty-nine years old and married. He graduated from Bristol, Virginia High School in 1954. Subsequent to that, he was in the Air Force for four years working primarily in telephone maintenance work. In 1958 plaintiff was hired by the telephone company to draw advertisements for the Yellow Pages. Plaintiff left the telephone company in 1960 to work in the art department of Park Seed Company in Greenwood, South Carolina. Plaintiff resigned his position with Park Seed Company in 1976.
2. Yeargin Construction Company of Greenville, South Carolina hired plaintiff as a mechanic's helper in 1976. For the next twelve years, plaintiff worked at Yeargin and was eventually promoted to superintendent. Plaintiff left Yeargin in December 1989 and moved to Rocky Mount, North Carolina.
3. Plaintiff was hired by defendant-employer, Ilco Unican, in Rocky Mount to work as a machine mechanic beginning in December, 1989. On October 8, 1990, plaintiff was repairing a jammed conveyor belt system in the Unican plant. A co-employee accidently turned on a metal pressing machine located behind plaintiff. The pressing arm of the machine moved in an upward direction, catching plaintiff in the buttocks and lifting and turning him sideways so that his shoulder was wedged against the wall. The pressure arm continued to move upwards, and plaintiff bent sideways. When the machine was cut off, the direction of the pressing arm was reversed. A worker restarted the machine and the pressure arm moved downward, releasing plaintiff from his position up against the wall.
4. Plaintiff was nauseated, and his back felt as if there were a "gouge" in it. Plaintiff reported to Urgent Care where he was seen by Dr. Kathy Belk. X-rays were taken and compared with pre-accident x-rays of plaintiff's spine. Some abnormal spinal curvature was observed by Dr. Belk. Plaintiff was referred to Dr. J. Bloem of Carolina Regional Orthopaedics.
5. After examining plaintiff, Dr. Bloem prescribed two weeks of physical therapy consisting of electrical stimulation and massage at Matthews Physical Therapy. Subsequently, Dr. Bloem certified plaintiff as ready to go back to work without restrictions.
6. Plaintiff returned to his employment with Unican after consulting Dr. Bloem. Plaintiff's job at that time involved lifting and welding steel beams on decks Unican was building around melting pots. Plaintiff's lower back pain worsened and he returned to Dr. Bloem for further treatment.
7. Because Dr. Bloem was out of the country, plaintiff was referred to Dr. Williams in Wilson, North Carolina. Dr. Williams prescribed some medications and therapy from December, 1990 to June, 1991. Plaintiff continued to have low back, buttock, and leg pain. Eventually, Dr. Williams referred plaintiff to Dr. Michael Glover, an orthopaedic surgeon. Dr. Glover continued conservative treatment. When plaintiff did not improve, Dr. Glover referred him to Dr. David Tomaszek, a neurosurgeon, for pain management and more aggressive conservative therapy.
8. Plaintiff presented to Dr. Tomaszek on September 18, 1991. He complained of back pain with radiation into the buttocks, into the back of his legs, and into the groin. The pain increased and became excruciating after prolonged standing, walking, bending, or twisting. Plaintiff's symptoms would abate transiently with aggressive conservative therapy and muscle spasm medicines but would always return.
9. Dr. Tomaszek diagnosed plaintiff as having multiple level degenerative disc disease and facet disease demonstrated by x-rays and a bone scan. Plaintiff's pre-existing arthritis and degenerative disc disease were aggravated by the violent twisting of his back during the injury by accident which occurred on October 8, 1990. Dr. Tomaszek was unable to pinpoint the exact level or levels of the lumbar and sacral areas of plaintiff's back which were causing plaintiff's pain due to arthritic spurring of the disc space running throughout the lumbar and sacral areas. Dr. Tomaszek ruled out surgery as having too high a risk of failure.
10. Dr. Tomaszek designated plaintiff as a candidate for lumbar facet blocks to treat his facet disease. Dr. Tomaszek performed lumbar facet blocks on plaintiff's spine at L3-L4, L4-L5, and L5-S1 on October 10, 1990 by inserting needles into the junction of the upper-outer aspect of the facets and transverse processes where the medial branch of the facet nerves were accessible. Marcaine and Depo-Medrol were injected by Dr. Tomaszek directly into the facets in order to provide relief from pain. Plaintiff was pain free for approximately three days following the facet block procedure; however, the pain then returned.
11. Dr. Tomaszek performed a percutaneous rhizotomy on plaintiff's spine on January 23, 1992, by placing a needle in the same targets where the lumbar facet blocks were placed. The tip of the needle is heated to 90 degrees centigrade for 90 seconds and inserted into the targets killing the nerve serving the facet. Plaintiff received relief following the rhizotomy but then experienced a gradual onset again of low back pain.
12. On March 5, 1992, Dr. Tomaszek sent the plaintiff to physical therapy for treatment of his residual low back pain. By May 20, 1992, plaintiff had progressed with his therapy to the point where he was asymptomatic with light activity.
13. As of April, 1992 when plaintiff last consulted Dr. Tomaszek, he had reached maximum medical improvement. In a letter dated May 20, 1992, Dr. Tomaszek released plaintiff to return to light or restricted duty and indicated he would provide non-sedating medication. Plaintiff was restricted from lifting more than thirty pounds, standing or sitting for more than two hours at a time, and from engaging in repetitive twisting or bending.
14. Defendant-employer offered plaintiff a light duty job as a tool crib attendant. A vocational rehabilitation representative provided Dr. Tomaszek with a job analysis. According to the analysis, plaintiff was required to stand for up to one hour at a time on a concrete floor and to sit up to two hours at a time to make computer data entries and to answer the telephone. It would also be necessary for plaintiff to walk perhaps one hour at a time and up to two hours in a day. In addition to his work for four hours at a time, plaintiff would be given four hours of physical therapy or work hardening in the morning followed by four hours of rest. Dr. Tomaszek approved plaintiff's four hours of work as a tool crib attendant along with the four hours of physical therapy and four hours of rest. Thus the tool crib job was part of an overall rehabilitation "4-4-4" schedule deemed suitable to plaintiff's capacity by Dr. Tomaszek.
15. Prior to returning to defendant-employer, plaintiff underwent a functional capacity evaluation, performed on June 24 and 25, 1992. Dr. Tomaszek reviewed the functional capacity evaluation and found it consistent with his diagnosis of plaintiff's back condition and the restrictions that he placed upon plaintiff for working the "4-4-4" schedule.
16. Plaintiff returned to work initially as a tool crib attendant, but made slow progress. On September 1, 1992, plaintiff presented to Dr. Lee A. Whitehurst for an IME at the request of the carrier-defendant. Dr. Whitehurst reviewed Dr. Tomaszek's records and radiological results and diagnosed plaintiff as having degenerative scoliosis with spondylosis of the lumbar spine. Dr. Whitehurst requested a discography and an MMPI-2. Dr. Gary L. Smoot conducted a discography on September 24, 1992 and diagnosed plaintiff as having internal disk disruptions from L1 to L5 and a left lateral herniated disk at L4-L5. A post discography CT scan was also performed.
17. Defendants filed a Form 24 application to stop payment of compensation with the Industrial Commission citing plaintiff's refusal to work and the videotape of plaintiff's physical exertions while moving to a new residence. The Form 24 was approved by the Commission on November 3, 1992 and defendants ceased paying plaintiff temporary total disability payments on that date. A motion for Reconsideration of Form 24 Approval for Carrier with affidavits and medical records attached was filed with the Commission on November 20, 1992 and was ultimately denied. The Motion for Reconsideration and accompanying materials, affidavits and medical records are not in the record as part of the evidence in this case. Subsequently, plaintiff filed a Form 33 request that claim be assigned for hearing. In the Request for Hearing, plaintiff seeks "additional temporary total and permanent disability benefits which has [sic] been denied by employer-carrier."
18. Plaintiff's four-hour-per-day employment as a tool crib attendant was specifically created for plaintiff by defendant and is not indicative of plaintiff's ability to earn wages on the competitive job market. Plaintiff thus remained totally disabled as of the time of the initial hearing of this matter, and is accordingly entitled to continuing indemnity benefits.
* * * * * * * * * * * * * * * * * *
Based upon the findings of fact, The Full Commission conclude as follows:
CONCLUSIONS OF LAW
1. Due to an injury by accident sustained on October 8, 1990, plaintiff suffered a back injury. Plaintiff was paid total disability benefits from October 9, 1990 to November 3, 1992 when the payments were terminated by the Industrial Commission's approval of a Form 24 application. This Form 24 application was improvidently granted. Peoples v. Cone Mills 316 N.C. 426,342 S.E.2d 798 (1986). Burwell v. Winn-Dixie Raleigh, Inc.,114 N.C. App. 69, 441 S.E.2d 145 (1994).
2. Plaintiff is entitled to total disability compensation benefits at the rate of $292.01 per week for the time period beginning November 3, 1992 and continuing until further Order of the Commission. N.C.G.S. 97-29. Such amounts as have accrued will be paid in a lump sum, subject to the attorney's fee hereinafter approved.
3. Plaintiff is entitled to have defendants pay the expenses of medical treatment related to the October 8, 1990 injury by accident, and for such additional treatment as may be reasonably necessary to effect a cure or give relief. N.C.G.S.97-25.
4. Plaintiff's counsel shall receive as a reasonable attorney's fee twenty-five percent of the compensation due.
* * * * * * * * * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission reverses the holding of the Deputy Commissioner and enter the following:
AWARD
1. For plaintiff's total disability, plaintiff is entitled to total disability compensation in the amount of $292.01 per week from November 3, 1992 and continuing until further Order of the Commission. To the extent that this compensation has accrued, it shall be paid to plaintiff in a lump sum.
2. Defendants shall pay the expenses of medical treatment related to the October 8, 1990 injury by accident, and for such additional treatment as may be reasonably necessary to effect a cure or give relief
3. A reasonable attorney fee in the amount of 25% of total compensation benefits of 15 weeks, due under the above award, IS HEREBY APPROVED for plaintiff's counsel and shall be paid as follows: twenty-five percent of the lump sum due plaintiff under Paragraph 1 of this AWARD shall be deducted from that sum and paid directly to plaintiff's counsel. Thereafter, every fourth check for compensation shall be paid directly to plaintiff's counsel.
4. Defendants shall bear the costs of this appeal.
This case is HEREBY REMOVED from the Full Commission hearing docket.
This is the 3rd day of April, 1997.
 S/ ____________________________ J. HOWARD BUNN, JR. CHAIRMAN
CONCURRING:
S/ __________________________ BERNADINE S. BALLANCE COMMISSIONER
S/ __________________________ J. RANDOLPH WARD