The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner William Bost. The appealing party has shown good ground to reconsider the evidence. The Full Commission reverses the Deputy Commissioner's Opinion and Award and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
 STIPULATIONS
1. At the time of the alleged injury giving rise to this claim, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. At such time, an employment relationship existed between Plaintiff and Employer-Defendant.
3. At all relevant times, Employer-Defendant was a duly-qualified self-insured with Educator Benefit Services as its servicing agent.
4. The Employee-Plaintiff's average weekly wage was SIXTY-THREE AND 75/00 DOLLARS ($63.75).
5. The Employee-Plaintiff suffered a compensable injury by accident on November 20, 1989.
6. The Employee-Plaintiff's average weekly wage prior to the accident was ONE HUNDRED FIFTY-EIGHT AND 96/100 DOLLARS ($158.96).
7. The Employee-Plaintiff worked at the reduced wage rate of SIXTY-THREE AND 48/100 DOLLARS($63.48) beginning August 17, 1992, and continuing through May 15, 1994. The Employee-Plaintiff was paid temporary partial disability benefits for the interim period of August 17, 1992, through May 15, 1994.
8. To be determined is whether the Plaintiff is entitled to any additional benefits, pursuant to the North Carolina Workers' Compensation Act, after voluntarily resigning from her position as an after-school child care attendant.
 ***********
The Full Commission finds as follows:
 FINDINGS OF FACT
1. Plaintiff started working for defendant employer as a cafeteria worker in one of its schools in August 1982, and remained so employed through the injury by accident giving rise hereto on November 20, 1989. Plaintiff had an average weekly wage of $158.96 which resulted in a compensation rate of $105.97 per week.
2. On November 20, 1989, plaintiff sustained an injury by accident arising out of and in the course of her employment with the defendant. Defendant accepted that injury as compensable and paid compensation for temporary total disability. Plaintiff attempted to return to work at her former duties and did work for a short time, but as a result of her injuries, plaintiff was unable to continue cafeteria work or any other work until on or about August 17, 1992, at which time she returned to work for defendant as a part-time worker tending to children in an after school day-care program at an average weekly wage of $63.75.
3. Plaintiff's injury consisted of a fracture and dislocation of the right shoulder and burns from boiling water on the forearm and arm.
4. As a result of her injuries plaintiff was eventually referred to Dr. James S. Thompson, an orthopedic surgeon specializing in hand and arm injuries, in Asheville, North Carolina, and on April 15, 1991, he performed a total shoulder replacement or arthroplasty on plaintiff's injured extremity. Plaintiff reached maximum improvement from her surgery in January, 1992. She had little relief from her shoulder replacement, and she was having difficulty with her shoulder. Plaintiff had no external rotation and had very limited movement in any other direction. She had to sleep in a chair because she was in too much pain to sleep in a bed. Dr. Thompson gave the plaintiff a permanent partial impairment rating of 45% of the right upper limb based on her pain and her limited range of motion.
5. On or about March 4, 1994, the plaintiff was examined by Larry G. Anderson, M.D., an orthopedic surgeon in Morganton, North Carolina. Dr. Anderson found she had severe restricted motion with associated pain in the right shoulder. He remarked that the patient had marked impairment in the entire right upper extremity due to her shoulder problem, and that although she had relatively good movement in her hand, it was difficult for her to position the hand in functional daily activities.
6. Based upon the recommendation of the claim representative for Educator Benefits Services, Inc., the defendant employer offered plaintiff a position in the defendant's after school day-care program caring for and supervising children between the ages of 6 years and 14 years (largely "latch-key children")between the hours of 3:00 p.m. and 6:00 p.m. after school. At times plaintiff tended these children by herself, and at other times there was another person with her.
7. The published qualifications and requirements for a person holding the position in the after school day care program which plaintiff was offered are a high school education, willingness to annually complete 10 hours of continuing education, and certification in first aid and adult-child cardiopulmonary resuscitation. State law requires child care workers whose duties are with children to be qualified in adult-child cardiopulmonary resuscitation, and defendant was aware of this.
8. Claimant is not a high school graduate having only finished the ninth grade. Defendant was aware of this. During the time plaintiff attempted to do this job, she never completed or attempted to complete any continuing education, and the defendant was aware of this and did not require plaintiff to perform the continuing education requirement.
9. In October of 1992, the defendant sent the claimant for 5.5 hours of American Red Cross Adult-Child Cardiopulmonary Resuscitation training and for 3.5 hours of Red Cross First Aid training. Plaintiff was unable to pass the written test and was unable to perform the physical requirements of adult-child cardiopulmonary resuscitation.
10. In early 1993, defendants sent plaintiff to a different training program where plaintiff did have 4 hours of recertification training but was given no written test nor required to do the physical acts required to perform CPR. The new organization delivered recertification cards to defendant employer but not to the claimant.
11. In September of 1991, the surgeon who treated plaintiff and did the shoulder replacement found that plaintiff had no external rotation and very limited motion in all other directions of her right arm, and was of the opinion plaintiff was left with a 45% permanent partial disability of the right upper extremities. He found that she could do little effective work with the right upper extremity.
12. Because of plaintiff's physical restrictions and pain she requires assistance bathing or showering, in dressing, in combing her hair, and in taking care of other personal needs. Her daughter who lives next door to her provides this assistance.
13. All of the plaintiff's physicians testified that plaintiff does not have the physical capacity to perform either adult or child cardiopulmonary resuscitation and to qualify for certification for such training. Dr. Michael S. Stutesman, an internist, testified that he is familiar with CPR techniques and with the certification program, and that it is not possible to receive a valid certification without actually demonstrating the ability to do chest compressions on a special machine designed to look like a human person which measures whether or not a candidate can physically press down adequately to be effective.
14. Dr. Stutesman said that in certain child CPR techniques it is necessary to hold a child in one arm and make the chest compressions with one's other arm, and that claimant, because of her physical limitations, could not qualify for either adult or child CPR. Plaintiff was also suffering from anxiety symptoms associated with the pain and disability resulting from her injury which were exacerbated by the death of her husband after her injury.
15. Plaintiff's work in the after school program made her increasingly more anxious and ill, and she found it impossible to cope with the children and resigned the part-time work with the program on May 12, 1994.
16. In November of 1994, the claimant was examined by John R. Clement, M.A., a clinical psychologist. Mr. Clement testified, based upon his examination-interview and upon testing, he was of the opinion that plaintiff had borderline intellectual functioning; limited reading and mathematical abilities, a generalized anxiety disorder, and a dependent personality disorder, and that these conditions adversely affected her ability to do any work and particularly to deal with children either from her standpoint or the standpoint of the children.
17. The defendant-employer has not offered the claimant any vocational rehabilitation services, any job search, or any retraining.
18. Because of plaintiff's educational level, mental abilities, and her physical disability, plaintiff was not qualified for the job in the after school program.
The published job requirements and activities were so modified by the defendant, that the job actually offered and given to plaintiff was not a position otherwise available in the market place and was not any measure of or evidence of plaintiff's earning capacity.
19. The fact that plaintiff did the job as modified is not evidence that plaintiff retains any earning capacity or ability to obtain a job in the market.
20. The defendant failed to show that plaintiff was able to find a job in the open market.
21. Plaintiff was justified in resigning from the child care position and refusing the job on account of her physical and emotional condition, and because the job contained requirements beyond her physical abilities and emotional conditions.
22. Plaintiff has not been able to return to her former pre-injury duties because of physical limitations from her injury, and she has been temporarily and totally disabled from employment since June 15, 1994.
 ***********
Based upon the findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Employee-plaintiff has carried her burden of proving that she was unable to work. PEOPLE v. CONE MILLS CORP., 316 N.C. 426,341 S.E.2d 798 (1986).
2. The After-school Assistant job given to the employee-plaintiff was not a suitable job, considering the employee-plaintiff's age, education, physical limitations, vocational skills and experience. N.C. Gen. Stat. § 97-29; BURWELLv. WINN DIXIE RALEIGH, INC., 114 N.C. App. 69, 441 S.E.2d 445
(1994).
3. Plaintiff is entitled to total temporary benefits at a compensation rate of $105.97 week from June 15, 1994 and continuing until further order of the Industrial Commission N.C. Gen. Stat. § 97-29.
4. Defendants shall pay all medical bills on behalf of plaintiff that has occurred as a result of her compensable injury on November 20, 1997.
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission reverses the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Plaintiff's claim for continuing total temporary disability benefits is granted.
2. Defendants shall pay $105.97 per week from June 15, 1994 and continuing until further order of the Industrial Commission.
3. Defendants shall pay all medicals to be incurred by plaintiff as a result of her injury by accident.
4. Defendant shall pay a lump sum of the outstanding amount due plaintiff. Plaintiff's attorney shall receive 25% of that lump sum. Thereafter plaintiff's counsel shall receive every fourth check due plaintiff.
5. Defendant's shall pay the costs.
 S/ ________________________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
S/ ______________________ KIM CRAMER DEPUTY COMMISSIONER
S/ ______________________ DIANNE C. SELLERS COMMISSIONER