ALBERT D. BURWELL, Employee, Plaintiff v. WINN-DIXIE RALEIGH, INC., Employer; SELF-INSURED (Crawford & Co.), Defendant

No. 9310IC503

(Filed 15 March 1994)

**Master and Servant § 72 (NCI3d)— workers' compensation—jobs identified as suitable by defendant employer—plaintiff capable of earning wages—entitlement to compensation for partial disability only**

The Industrial Commission did not err in awarding plaintiff benefits for a permanent partial disability rather than benefits for a permanent total disability where there was sufficient evidence to support the finding that plaintiff was capable of obtaining one of the jobs identified by defendant employer as being available within plaintiff's locality and suited to his skills, education, and physical ability, and plaintiff was thus capable of earning wages. N.C.G.S. §§ 97-30, 97-31(23).

**Am Jur 2d, Workers' Compensation § 381.**

Appeal by plaintiff from Opinion and Award for the Full Commission filed 10 November 1992. Heard in the Court of Appeals 10 February 1994.

*Frank W. Ballance, Jr. and Associates, P.A., by Frank W. Ballance, Jr., for plaintiff-appellant.*

*Patterson, Dilthey, Clay & Bryson, by Richard B. Conely, Sr., for defendant-appellee.*

GREENE, Judge.

Albert D. Burwell (plaintiff) appeals from Opinion and Award for the Full Commission filed 10 November 1992.

On 26 May 1987, plaintiff, a then thirty-four-year-old high school graduate, injured his back while working as the frozen foods manager at a Winn-Dixie (defendant-employer) store in Louisburg.

Plaintiff's back did not respond to treatment and on 17 July 1987, Dr. Sukri Vanichkachorn performed a bilateral laminectomy on plaintiff, for a condition which Dr. Vanichkachorn diagnosed as a herniated disk at the L4-L5 level.

On 10 September 1987, Dr. Robert Price operated on plaintiff, performing a L5-S1 partial hemilaminectomy and a secondary left L4-L5 hemilaminectomy with a diskectomy and facetectomy. In laymen's terms, Dr. Price removed a disk and a part of the hole that the nerve goes out of as it exits through the bone at the L5 level. Dr. Price performed a second operation on plaintiff, performing a complete laminectomy of L4 and L5 with a bilateral L4-L5 and L5-S1 nerve root exploration. This operation consisted of removing the posterior part of the bone that surrounds the spinal canal at the L4-L5 and the L5-S1 levels and of opening up the nerves as they went through the holes in the bone to make sure nothing was pressing on them. Dr. Price continued to treat plaintiff until April 1989. During this time period, plaintiff continued to complain of pain in the left leg, foot and back, limited mobility of his back and leg, constant pain, and stiffness of his left leg and numbness in his left foot.

Prior to his employment with defendant-employer, plaintiff had worked for five years as a route salesman, delivering vending machines and snack goods to customers. He had also worked for one year as a garbage collector for the City of Norlina earning approximately $4.00 per hour, and for one and one-half years for Faucet Enterprises in Henderson where he filled furnaces with glass for the purpose of spinning fabric for filters.

Plaintiff testified that he has been unable to return to his job with defendant-employer since the date of his injury, that he has been unable to work or earn wages in any other job since that time, and that he does not believe he can work anywhere now because he cannot sit or stand for any length of time and he has problems walking. Plaintiff also testified that he continued to experience a constant "stabbing" pain in the lower part of his back and radiating down his left leg. Plaintiff testified that the surgeries had not done much to decrease his pain and that his physical condition had remained unchanged since June of 1989.

Dr. Price testified that in his opinion plaintiff was employable with limitations, specifically, plaintiff could work in a job that did not require lifting over twenty pounds, long-term sitting, a great deal of bending, or standing in one place continuously. Dr. Price further stated that plaintiff "could be employed in any job where he was allowed to do some sitting, some standing, some walking,

and didn't—and was not required to do heavy lifting." Dr. Price rated plaintiff's disability as a 38.5% permanent partial disability.

Dr. Lee Whitehurst, who examined plaintiff on 31 August 1989, testified that based upon his examination of plaintiff, he believed plaintiff to be employable in a job that did not require prolonged bending or stooping or lifting unassisted more than thirty-five pounds. Dr. Whitehurst rated plaintiff's disability as a 15% permanent partial disability.

Mr. George Lentz, a vocational consultant, testified by deposition that he had conducted a labor market survey to determine what jobs were available within a thirty-five to fifty mile radius of plaintiff's home. Mr. Lentz used the medical restrictions imposed by Dr. Price and Dr. Whitehurst, was aware that plaintiff was a high school graduate, and knew of plaintiff's vocational skills and his age. Mr. Lentz, taking into account these facts, identified available jobs that plaintiff was capable of performing. Those jobs included press operator, cashier at a retail store, assistant manager at the same retail store, group home manager, mobile home salesman, cashier at a large retail store, telemarketer, security guard, and insurance salesman. He stated that he had reviewed the results of tests given to plaintiff by Ms. Beverly Fetty which revealed that plaintiff could read at a 6.4 grade level and perform mathematical computations at the fourth grade level, and that the results of those tests did not change his opinion that plaintiff was capable of performing each of the above-mentioned jobs.

Ms. Fetty, a vocational evaluator at Raleigh Vocational Center, testified that she had conducted a vocational rehabilitation assessment of plaintiff on 14 August 1990. She stated that based upon the results of various achievement and aptitude tests taken by plaintiff, that he had a reading comprehension grade level of 6.4 and a beginning fourth grade mathematic level. In response to a question as to what jobs she had located "that . . . [plaintiff] could do," Ms. Fetty answered that "based on the computer searches" and after "identifying [plaintiff's] aptitudes and using the medical information for limitations no jobs were identified." Ms. Fetty stated

> although it is apparent from the test results that plaintiff has skills which are of a reasonable nature on the job, in light of his observed physical incapacity, such as sitting five minutes and standing five minutes, on a [sic] alternating schedule,

it was concluded that he is not able to perform work at this time, based on his present condition as we saw it.

Under questioning by defendant's counsel, Ms. Fetty stated that her opinion plaintiff "cannot work is not based on the medical records," but rather on his "aptitudes as well as his inability to sit or stand for five minutes, longer than five minutes either way." Ms. Kathryn F. Lamm, who also worked as a vocational evaluator for Raleigh Vocational Center, but who had never actually had contact with plaintiff, by deposition testified that given plaintiff's "tested skill levels" and that plaintiff "was unable to either sit or stand for periods of greater than five minutes . . ., we [she and Ms. Fetty] could not identify jobs which he would be capable of completing in the competitive market, and therefore it was our conclusion that competitive employment is not a feasible goal for him."

The Commission found the following relevant facts:

11. As a result of the injury of 26 May 1987, his multiple surgeries and physical limitations, plaintiff is not capable of performing the job he held with defendant-employer, nor is he capable of returning to the kind of work he had performed prior to working for defendant-employer. However, he is capable of engaging in light work which does not involve lifting over 20 pounds, long term sitting, frequent bending, or prolonged standing in one place. He is able to read and write and has experience working in a managerial position where he had to order merchandise. There is no evidence that he cannot add, subtract or make change.

12. Plaintiff has not attempted to return to work of any kind since 26 May 1987.

13. As a result of the injury of 26 May 1987, plaintiff retains a 30 percent permanent partial disability to his back.

14. As a result of the injury of 26 May 1987, plaintiff has been since 2 June 1989 partially incapable of earning the same wages in other employment. He retains the capacity (since 2 June 1989) to work as a security guard, night watchman, checker at a truck terminal, sewing machine operator, telemarketer, and cashier at a large retail chain store. All of these jobs are available in plaintiff's locality.

15. Plaintiff has since 2 June 1989 retained the capacity to earn an average weekly wage of $170.00 ($4.25 per hour for a 40 hour week).

The Commission entered an award for plaintiff which provided, in pertinent part, as follows:

2. Defendant shall pay plaintiff permanent partial disability benefits at the rate of $185.34 for a period of 90 weeks.

---

The issue presented is whether there is sufficient evidence to support the finding that plaintiff was capable of obtaining one of the available jobs identified by defendant-employer.

Plaintiff argues that the Commission erred by awarding him benefits for a permanent partial disability under N.C. Gen. Stat. § 97-31(23) rather than benefits for a permanent total disability under N.C. Gen. Stat. § 97-30, because defendant-employer failed to refute plaintiff's evidence that he was totally disabled.

A claimant who asserts that he is entitled to compensation under N.C. Gen. Stat. § 97-29 has the burden of proving that he is, as a result of the injury arising out of and in the course of his employment, totally unable to "earn wages which . . . [he] was receiving at the time [of injury] in the same or any other employment." *Tyndall v. Walter Kidde Co.*, 102 N.C. App. 726, 730, 403 S.E.2d 548, 550, *disc. rev. denied*, 329 N.C. 505, 407 S.E.2d 553 (1991). If the claimant presents substantial evidence that he is incapable of earning wages, the employer has the burden of producing evidence to rebut the claimant's evidence. This requires the employer to "come forward with evidence to show not only that suitable jobs are available, *but also that the plaintiff is capable of getting one*, taking into account both physical and vocational limitations." *Kennedy v. Duke Univ. Medical Ctr.*, 101 N.C. App. 24, 33, 398 S.E.2d 677, 682 (1990) (emphasis added); *Bridges v. Linn-Corriher Corp.*, 90 N.C. App. 397, 400-01, 368 S.E.2d 388, 390, *disc. rev. denied*, 323 N.C. 171, 373 S.E.2d 104 (1988). A "suitable" job is one the claimant is capable of performing considering his age, education, physical limitations, vocational skills, and experience. *See Trans-State Dredging v. Benefits Review Bd.*, 731 F.2d 199, 201 (4th Cir. 1984) (discussing burden of employer in context of Longshoreman's and Harbor Worker's Compensation Act). An employee is "capable of getting" a job if "there exists a reasonable

likelihood . . . that he would be hired if he diligently sought the job." *Id.* It is not necessary, as plaintiff seems to suggest, that the employer show that some employer has specifically offered plaintiff a job. If the employer produces evidence that there are suitable jobs available which the claimant is capable of getting, the claimant has the burden of producing .evidence that either contests the availability of other jobs or his suitability for those jobs, or establishes that he has unsuccessfully sought the employment opportunities located by his employer. *Tyndall*, 102 N.C. App. at 732, 403 S.E.2d at 551.

In this case, there is no dispute that plaintiff presented substantial evidence that he was unable, as a result of injuries sustained in the course and scope of his employment with defendant-employer, to earn any wages in the same or other employment. The defendant-employer presented evidence that there were several available suitable jobs within plaintiff's "locality." Plaintiff argues that he is physically incapable of performing any job and even if he were capable, that there is no evidence that he is "capable of getting" any of the jobs found by the defendant-employer.

In this case, although there is some conflict in the evidence, there was competent evidence from Mr. Lentz that plaintiff, taking into account his age, education, physical limitations, and vocational skills, was capable of performing certain jobs that were available "within a thirty-five to fifty mile radius" of his home. *Hilliard v. Apex Cabinet Co.*, 305 N.C. 593, 595, 290 S.E.2d 682, 684 (1982) (findings of the Commission are binding on appeal if supported by competent evidence). This evidence is sufficient to satisfy the defendant-employer's burden of showing that there existed a reasonable likelihood that plaintiff would be hired if he diligently sought employment in the jobs found by the defendant-employer. *See Tyndall*, 102 N.C. App. at 729, 403 S.E.2d at 550 (evidence that "jobs were available in the immediate area for persons with the experience of [c]laimant" held sufficient to satisfy employer's burden).

Although plaintiff did offer evidence to refute the evidence of Mr. Lentz, the Commission chose instead to believe Mr. Lentz's testimony. *Matthews v. Petroleum Tank Serv., Inc.*, 108 N.C. App. 259, 264, 423 S.E.2d 532, 535 (1992) (Commission is the sole judge of the credibility of witnesses). Accordingly, the Commission did not err in concluding that plaintiff was capable of earning wages

and was therefore entitled only to compensation for permanent partial disability compensation rather than for permanent total disability under N.C. Gen. Stat. § 97-29.

Three of the five remaining assignments of error argued by the plaintiff relate to the sufficiency of the evidence to support the findings made by the Commission. We have reviewed each of the questioned findings and determine that there was competent evidence to support each finding. We have reviewed and reject plaintiff's remaining two assignments claiming that the Commission erred in failing to make findings of fact concerning plaintiff's pain.

Affirmed.

Judges COZORT and ORR concur.