Upon review of all of the competent evidence of record with reference to the errors assigned, and finding no good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the award, the Full Commission AFFIRMS and ADOPTS the Opinion and Award of the Deputy Commissioner as follows:
The Full Commission find as facts and conclude as matters of law the following which were entered into by the parties in the Form 21 Agreement for Compensation, approved by the Industrial Commission on February 22, 1991, as
STIPULATIONS
1. The parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act and the employment relationship existed at all relevant times.
2. The plaintiff sustained an admittedly compensable injury on September 20, 1990.
3. The plaintiff's average weekly wage was $319.41, which yielded a compensation rate of $212.95.
4. The issue for determination is whether the plaintiff is entitled to additional workers' compensation benefits.
* * * * * * * * * * * * * *
Based upon all the competent, credible evidence adduced from the record, the Full Commission make the following
FINDINGS OF FACT
1. On September 20, 1990 the plaintiff was a 56 year old male with a 10th grade education, who was employed as a delivery driver and installer with defendant-employer. The plaintiff had previous experience in farming, laundry service, carpentry, and general construction.
2. On September 20, 1990, the plaintiff sustained an admittedly compensable injury when he fell from a ladder while installing a gas line on the second floor of a residential customer's house.
3. As a result of the injuries sustained in the fall, the plaintiff was treated by Dr. H.D. Mabe, Jr., and subsequently by Dr. Joe Archie, Dr. Donald Reibel, and Dr. Willy Chu.
4. Shortly after the accident, the plaintiff began to experience difficulty with blood clots in his left leg. The plaintiff had previously injured his left leg in an automobile accident in 1964, and had to undergo surgery for osteomyelitis of his upper tibia and knee as a result thereof.
5. As of August 12, 1991, Dr. Donald Reibel, and orthopedist, opined that the plaintiff did not require any additional surgery for his left leg. Dr. Reibel stated that although he did not feel the plaintiff could return to his job as an installer with defendant, that plaintiff's leg strength had returned and he could be capable of performing light work. Dr. Reibel recommended a work hardening program for plaintiff.
6. Dr. Mabe, who was plaintiff's treating physician and whose practice was internal and family medicine, opined in August of 1991 that the plaintiff was capable of sedentary or light work.
7. On October 2, 1991, the plaintiff underwent a functional capacity evaluation at Village Therapy Center, which indicated that he was capable of medium work, lifting 45 pounds and push/pull 86 to 87 pounds. The plaintiff was unable to stand-up, lift, kneel, squat, or climb a ladder. He was cooperative in the evaluation.
8. On February 25, 1992, the plaintiff underwent an independent medical evaluation with Dr. Zane Walsh, Jr., whose practice is physical medicine and rehabilitation. Dr. Walsh found the plaintiff to be at maximum medical improvement and assigned a 10% permanent partial disability rating to the left leg. Dr. Walsh reviewed the functional capacities report, and modified plaintiff as being capable of light work, due to concerns that lifting of more than 25 pounds could be too strenuous on the left leg.
9. On September 11, 1992, defendants hired vocational rehabilitation specialist Maria King to assist the plaintiff with a job search. Ms. King identified a number of available jobs within the plaintiff's capacity; however, the plaintiff refused to cooperate with Ms. King to follow-up on leads or to make application to the job sites. The plaintiff made no effort to apply at any of the job leads identified by Ms. King, and as of March 1, 1993, vocational rehabilitation efforts ceased due to plaintiff's failure to cooperate.
11. The plaintiff told Ms. King and reiterated at the hearing that he was not interested in pursuing any work which paid less than his former job.
12. As a result of the injury of September 20, 1990, the plaintiff is not capable of performing the job which he held with defendant-employer. However, he is capable of performing light work with restrictions of no squatting, no lifting more than 10 pounds, no duties that require skill maneuvers with his feet, and no climbing. He is able to read and write, and had been attending G.E.D. classes, but quit attending the same. The plaintiff is also capable of driving his personal vehicle.
13. Since September 11, 1992, the plaintiff retains the capacity to work as a cashier at Advance Auto, a sewing machine operator with M.V. Apparel, and a cashier with Hasty Mart. These jobs were available in plaintiff's locality, in late 1992, and Dr. Walsh has found these jobs to be within the plaintiff's physical capacity. In addition, Ms. King had identified vacancies and provided the same to plaintiff, including front desk clerk at Howard Johnson Inn, cashier with Travel World, cashier with Quick Shop, dry cleaner attendant, fuel attendant, fuel worker at Saddlers BP Station, shipping clerk with Taylor Temporary, machine operator, security guard, hand packager, parts clerk, upholsterer, desk clerk at Dutch Inn, assembler at Heat Master, Inc., cashier at Servco, and bus monitor.
14. Although the plaintiff testified he was unable to stand and perform work due to leg pain, the plaintiff's testimony is specifically refuted by videotape surveillance which showed the plaintiff raking and performing strenuous yardwork. The plaintiff was observed sitting, bending, standing, and twisting for prolonged periods of time. Therefore, plaintiff's testimony regarding limitations due to pain are not accepted as credible, as surveillance reports, and the corroborating videotape clearly establish that the plaintiff was capable of standing, twisting, bending, and raking for prolonged periods. Based on this, he had not pursued any of the job leads which Ms. King had provided to him.
* * * * * * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact the Full Commission make the following additional
CONCLUSIONS OF LAW
1. A claimant who asserts that he is entitled to compensation under N.C. GEN. STAT. § 97-29 has the burden of proving that he is, as a result of the compensable injury, totally unable to "earn wages which [he] was receiving at the time [of injury] in the same or any other employment." Tyndall v. Walter Kidde Co.,102 N.C. App. 726, 403 S.E.2d 548, disc. rev. denied.,329 N.C. 505, 407 S.E.2d 553 (1991); Burwell v. Winn-DixieRaleigh, Inc., 114 N.C. App. 69, 441 S.E.2d 145 (1994).
2. Once the plaintiff presents substantial evidence that he is incapable of earning wages, the employer has the burden to rebut plaintiff's evidence. If the employer produces evidence that there are suitable jobs available which the claimant is capable of getting, the claimant has the burden of producing evidence with either contests the availability of other jobs or his suitability for those jobs, or establishes that he has unsuccessfully sought the employment opportunities located by his employer. Burwell, 114 N.C. App. at 74.
3. In this case, the defendants, through Ms. King's efforts, provided the plaintiff with a number of job leads for employment within the plaintiff's work capacity. However, the plaintiff made absolutely no effort to apply for any of the job opportunities identified by Ms. King. Furthermore, the plaintiff made no independent effort to seek employment on his own. He has therefore failed to carry the burden to prove any entitlement to ongoing temporary total disability benefits.
4. The plaintiff reached maximum medical improvement on February 25, 1992, and was provided with vocational rehabilitation services from September 11, 1992 to March 1, 1993. Therefore, the plaintiff is entitled to temporary total disability only to March 1, 1993. The defendant-carrier is entitled to a set-off for all weekly benefits provided to the plaintiff since that time.
5. The plaintiff is entitled to permanent partial disability compensation for the 10% rating to his left leg. However, as the defendants have overpaid the plaintiff, they are entitled to a credit for temporary total disability compensation.
* * * * * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enter the following
AWARD
1. Subject to an attorney's fee herein approved, the plaintiff is entitled to 20 weeks of permanent partial disability compensation. The defendants are entitled to offset the amount of overpayment of temporary total disability paid to plaintiff from the date rehabilitation efforts ceased on March 1, 1993 against the 20 weeks.
2. A reasonable attorney's fee of 25% of the permanent partial compensation is herein approved for plaintiff's counsel for services provided to the plaintiff, and as plaintiff has received an overpayment of benefits, counsel shall seek this payment directly from plaintiff.
3. Defendants shall pay the costs.
 S/ ___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/ ___________________ J. HOWARD BUNN, JR. CHAIRMAN
S/ ___________________ COY M. VANCE COMMISSIONER