The undersigned have reviewed the Award based upon the record of the proceedings before the Deputy Commissioner.
The appealing party has shown good grounds to reconsider the evidence. However, upon reconsideration of the evidence, the undersigned reach the same facts and conclusions as those reached by the Deputy Commissioner with some modifications. Neither party here requested the Full Commission to receive further evidence or to rehear the parties or their representatives. The Full Commission, in their discretion, have determined that there are no good grounds in this case to receive further evidence or to rehear the parties or their representatives, as sufficient convincing evidence exists in the record to support their findings of fact, conclusions of law, and ultimate award.
Accordingly, the Full Commission find as fact and conclude as matters of law the following, which were entered into by the parties as
STIPULATIONS
1. On the dates involved, the parties were bound by and subject to the North Carolina Workers' Compensation Act.
2. On said date the employer-employee relationship existed between the parties.
3. As of said date, the defendant was a duly qualified self-insurer under the provisions of the North Carolina Workers' Compensation Act.
4. On said date the plaintiff was earning an average weekly wage to be determined from a North Carolina Industrial Commission Form 22, Wage Scale Chart to be provided by the defendant covering the period April 20, 1992 through January 5, 1993 together with pay periods subsequent to said period.
5. That the issues to be determined in this case are:
 a. Did the plaintiff sustain an occupational disease or injury by accident arising out of and in the course of her employment with the defendant-employer; and,
 b. If so, do the complaints of which the plaintiff complaints result from the said occupational disease or accidental injury; and,
 c. If so, to what compensation, if any, is the plaintiff entitled under the Act.
6. The parties further stipulate into the record a document listing out the periods when plaintiff was out of work subsequent to January 5, 1993 to be provided by the defendant.
7. It is also stipulated that plaintiff began medical care and treatment for her complaints as of January 11, 1993.
8. The parties further stipulate into evidence Stipulated Exhibit One being a transcribed interview of the plaintiff dated January 27, 1993 and Stipulated Exhibit Two being a videotape of the plaintiff's present work activities.
At the initial hearing on March 21, 1994, the parties introduced the following exhibits:
1. Defendant's Exhibit 1, marked D1, consisting of a work application by the plaintiff to the defendant.
Subsequent to the initial hearing on March 21, 1994, the parties entered the following documentation into the record which have been considered by the undersigned in ruling in this matter and with respect to which all Motions and Objections have been duly considered under the applicable law and rules of evidence:
1. As stipulated, a North Carolina Industrial Commission Form 22, Wage Scale Chart reflecting an average weekly wage of $317.42 and a compensation rate of $211.62, together with a synopsis of work and wage records for the year 1993.
2. Deposition of David Lee Abernethy, M.D. dated May 13, 1994.
3. Deposition of E. Brown Crosby, M.D. dated May 6, 1994.
4. Deposition of Andrea A. Stutesman, M.D. dated April 29, 1994.
* * * * * * * * * * *
Based upon the competent and convincing evidence adduced at the hearing, the undersigned make the following additional
FINDINGS OF FACT
1. On January 5, 1993, the plaintiff, 33 years of age, with education additional to that of high school and who had been working for the defendant since April 20, 1992, was employed by the defendant-employer as a production sewer.
2. As a production sewer, the plaintiff's work duties required her to work with her hands stretching material to form and sew sofa cushions and backs, to use scissors and a pick to loosen stitches, during an eight to nine hour day for five to five and a half days per week, using repetitive hand and arm motions to accomplish her said work duties.
3. On January 5, 1993, the plaintiff encountered some different material which she had not processed before and, because of its thicker quality, was more difficult to stretch and hold with her hands and arms and perform the sewing process, at which time, when she complained to her supervisor of the difficulty, she was encouraged by her supervisor to exert more force and effort to perform the task.
4. On this occasion as above-described, the plaintiff began to experience pain in her hands, wrists and elbows, which she duly reported to her supervisor, was examined by the plant nurse and ultimately referred to the plant doctor for medical care and treatment on January 11, 1993.
5. Subsequent to January 11, 1993, the plaintiff was conservatively medically treated by several medical providers including steroid blocks, was medically diagnosed as suffering from bilateral myofascial pain syndrome, bilateral tendonitis wrists and elbows and bilateral carpal tunnel syndrome, medically placed at light restricted work from January 11, 1993 to January 25, 1993, taken out of work from January 25, 1993 to April 29, 1993, returned to light restrictive work from April 29, 1993 until June 13, 1996, at which time Dr. Crosby instructed plaintiff to stay out of work for three weeks. He ultimately pronounced plaintiff at maximum medical improvement with respect to her hand and arm on June 16, 1993, at which time she was medically rated. She was not written out of work by her physician past the three week period. Plaintiff's hands did continue to give her some problems and ultimately led to block injections. However, it was Dr. Crosby's opinion that after her nerve blocks, as of January 11, 1994, her permanency rating had not changed.
6. Prior to January 5, 1993, the plaintiff had seriously studied music by taking piano lessons and playing the guitar which she was unable to continue after said date of January 5, 1993 because of her hand and arm pain. However, subsequent to June 16, 1993, when she was medically rated with respect to permanent disability of her hands, and when defendants had no work available within her work restrictions, plaintiff only made a few attempts at finding work for approximately a two and one-half to three month period, at which time she chose to stop looking. Instead, she chose to enroll in a community college in September of 1993 and again took up the study of music through piano lessons and additionally studied computer keyboard courses which courses and studies required her to use her hands and fingers in carrying out her studies, and the medical expert opinion was that this activity probably aggravated her hands and fingers.
7. On or about December 9, 1993, while continuing her musical studies, the plaintiff again accepted employment from the defendant and continued her musical studies and the new employment until on or about February 1995 when she voluntarily terminated said employment to pursue her musical activities exclusively.
8. The work duties as above-described which the plaintiff was performing on January 5, 1993 for the defendant placed her at a greater risk than the public generally outside of the employment of developing the occupational disease of carpal tunnel syndrome and the incident of January 5, 1993 was an interruption in her work routine further exposing her to said occupational disease.
9. On January 5, 1993, the plaintiff sustained the occupational disease of bilateral carpal tunnel syndrome by accident arising out of and in the course of the employment with the defendant-employer.
10. The plaintiff reached maximum medical improvement on June 16, 1993 when she was medically rated with respect to her bilateral carpal tunnel syndrome.
11. The plaintiff has sustained a ten percent permanent partial disability of her right hand and a five percent permanent partial disability of her left hand as the result of the incident occurring on January 5, 1993.
12. The plaintiff lost time from work as a result of the injury from January 25, 1993 to April 29, 1993. Plaintiff returned to light duty work with defendant-employer from April 29, 1993, through June 13, 1993, which was available for only half days within the doctor's restrictions.
13. The plaintiff was earning an average weekly wage of $317.42 on January 5, 1993.
* * * * * * * * * * *
The foregoing stipulations and findings of fact engender the following
CONCLUSIONS OF LAW
1. On January 5, 1993, the plaintiff sustained the occupational disease of bilateral carpal tunnel syndrome by accident arising out of and in the course of the employment with the defendant-employer.
2. The plaintiff is entitled to temporary total disability compensation benefits from January 25, 1993 to April 29, 1993 at the rate of $211.62 per week.
3. Plaintiff is entitled to temporary partial disability from April 29, 1993 until June 13, 1993, in the amount of the difference between $211.62 per week and the amount actually earned per week. Defendant shall submit a concise printout to plaintiff so that the amounts due may be accurately determined based on actual amounts earned.
4. The plaintiff is entitled to permanent partial disability compensation benefits for thirty-six weeks at the rate of $211.62 per week commencing June 16, 1993. While plaintiff is allowed to elect the more favorable remedy, as this amount is greater than the approximately twelve weeks of total disability, maximum, that plaintiff could possibly have been entitled to following her release at maximum medical improvement (including the three weeks for which plaintiff was written out of work by Dr. Crosby), the undersigned assume that she will elect the more favorable remedy of the permanent partial disability pay out. There is insufficient convincing evidence of record to prove that plaintiff, following release at maximum medical improvement, was incapable of earning the same or similar wages at the same or anyother employment. Plaintiff, by her own admission, did not seekany employment, much less make any reasonable efforts, following her return to school in September of 1993. There is further no evidence of record to indicate that it was futile or that plaintiff was medically incapable of working or of continuing to make reasonable efforts to locate suitable work. The burden of proof as to ongoing disability remains with the plaintiff in this case, and there has been no previous officially binding acknowledgment of her ongoing disability such as an approved Form 21 agreement. Kisiah v. W. R. Kisiah Plumbing, N.C. App. No. COA 95-878 [filed: Oct. 15, 1996]. Thus, plaintiff must prove that she is totally incapable of earning wages for the period specified in order to be entitled to temporary total disability payments.Russell v. Lowes Products Distribution, 108 N.C. App. 762,425 S.E.2d 454 (1993). It is only when plaintiff meets her initial burden of proving that she is incapable of earning wages that the burden shifts to the employer to show that jobs are available within the plaintiff's restrictions. Burwell v. Winn-Dixie Co.,114 N.C. App. 69, 441 S.E.2d 145 (1994). Plaintiff, by her own admission, elected to attend school full-time starting in September of 1993 and thus made no reasonable efforts following that time to find any employment. In any event, it is further concluded that, according to the convincing medical testimony, the piano lessons plaintiff chose to continue may have further aggravated her condition so as to sufficiently cloud the causation issue following December of 1993.
5. Considering the evidence as a whole, in particular that which is material, the undersigned are of the opinion and conclude as a matter of law that the facts found in this Opinion and Award and the conclusions herein made are credible and convincing in the sense that they are believable, plausible and probable.
* * * * * * * * * * *
The foregoing stipulations, findings of fact, and conclusions of law engender the following:
AWARD
1. The defendant shall pay to the plaintiff in one lump sum temporary total disability compensation benefits from January 25, 1993 to April 29, 1993 at the rate of $211.62 per week, less the attorney fee hereinafter provided.
2. Defendant shall pay plaintiff temporary partial disability benefits for the period of time from April 29, 1993, to June 13, 1993, in the amount of the difference between $211.62 per week and the amounts actually earned. Again, defendant shall provide to plaintiff a clear and concise printout of amounts actually paid plaintiff so that all parties may be assured of the accuracy of this award.
3. The defendant shall pay to the plaintiff permanent partial disability compensation benefits for thirty-six weeks at the rate of $211.62 per week commencing June 16, 1993, less the attorney fee hereinafter provided.
4. The defendant shall pay all medical expense resulting from said injury up to the date of this Opinion and Award and no further when the same have been presented and approved as by law provided.
5. An attorney fee of twenty-five percent of the compensation herein allowed is hereby approved and awarded to Randy D. Duncan for his services to the plaintiff to be deducted from the compensation above-provided and paid directly to said attorney.
The defendant shall pay the costs.
This the __________ day of ________________________, 1996.
 S/ _________________ J. HOWARD BUNN, JR. CHAIRMAN
CONCURRING:
S/ _________________ DIANNE C. SELLERS COMMISSIONER
S/ _________________ LAURA K. MAVRETIC COMMISSIONER
JHB/nwm 11/19/96