The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Berger, the briefs, and arguments of counsel. As the appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives, the Full Commission modifies and affirms the Opinion and Award of the Deputy Commissioner.
 *************
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in a Pre-Trial Agreement and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. All stipulations contained in the Pre-Trial Agreement are received into evidence.
2. A supervisor's report of accident investigation marked as stipulated exhibit 1 was received into evidence.
3. A blue index of medical records marked as stipulated exhibit 2 was received into evidence.
4. A recorded statement marked as stipulated exhibit 3 was received into evidence.
5. Wage information marked as stipulated exhibit 4 was received into evidence.
6. A form 19 marked as stipulated exhibit 5 was received into evidence.
7. The parties stipulated that plaintiff had an average weekly wage of $204.22.
 *************
The Full Commission modifies and affirms the findings of fact found by the Deputy Commissioner as follows:
 FINDINGS OF FACT
1. At the time of the hearing, plaintiff was a thirty-six year old female with a ninth grade education.
2. Plaintiff had a prior history of shoulder and neck problems. On 3 July 1993, plaintiff sustained an acute upper back and neck strain while lifting a patient. On 11 March 1994, plaintiff sustained a muscle strain in her neck and shoulder while lifting a patient while employed with the defendant-employer.
3. A 31 March 1994 x-ray revealed that plaintiff had a normal cervical spine.
4. From 31 March 1994, until 10 September 1995, plaintiff did not seek any additional medical treatment for her left shoulder and neck problems.
5. As of 9 September 1995, plaintiff had been employed with the defendant-employer as a nursing assistant for almost two years. Plaintiff's regular job duties included lifting patients.
6. On 9 September 1995, plaintiff was assisting a co-worker in lifting a patient that weighed approximately two hundred and sixty pounds. The patient's weight shifted on to the plaintiff and she felt a muscle pull in her left shoulder. Plaintiff did not experience any pain at that time. The next morning, plaintiff awoke with a pain in her neck and left shoulder that was so severe, she thought she was having a heart attack. Plaintiff went to the emergency room at the Moore Regional Hospital where she underwent treatment that ruled out any acute cardiopulmonary process.
7. By 19 September 1995, plaintiff had begun to experience pain all the way down her left arm as well as numbness in her left thumb.
8. As a result of the 9 September 1995 incident involving the lifting of a patient, plaintiff sustained a disc herniation at the C5-6 level.
9. As a result of the 9 September 1995 incident involving the lifting of a patient, plaintiff underwent an anterior cervical diskectomy and fusion at the C5-6 level with an iliac crest graft on 13 February 1996.
10. The operating physician, Dr. Dalrymple, stated that plaintiff would take between six and eight weeks to recover from the surgery. Plaintiff presented to Dr. Dalrymple on 3 April 1996, 1 May 1996, and 1 August 1996, each time with complaints of continuing pain and numbness. Following the 1 August 1996 examination, Dr. Dalrymple noted that plaintiff was somewhat depressed and that she was unable to work with her continuing discomfort.
11. On 17 September 1996, plaintiff was examined by Dr. Malcolm Shupeck and diagnosed with Cervical HNP W/O Myelopathy as a result of a postoperative change involving a possible subtle abnormality at C5-6 on the left.
12. On 6 December 1996 plaintiff presented to Dr. Fred McQueen. Following his examination, Dr. McQueen stated that under her present condition, plaintiff remained totally disabled and incapable of earning wages.
13. As a result of the 9 September 1995 incident involving the lifting of a patient, plaintiff was unable to earn any wages from 10 to 15 September 1995, 18 to 21 September 1995, 24 to 25 September 1995, 2 October 1995 to 2 November 1995 and 13 February 1996 to the present and continuing. Plaintiff obtained medical releases from work for each of the periods during which she was unable to earn wages.
14. On November 27, 1996, plaintiff was terminated for excessive absenteeism and for failure to submit a leave of absence form. Plaintiff's excessive absenteeism was the result of her compensable injury; however, plaintiff was terminated from her employment for failure to comply with company policies for which a nondisabled employee would ordinarily have been terminated.
15. Plaintiff's current and continuing inability to find or hold other employment at a wage comparable to that earned prior to the injury is due to the work-related injury she sustained on 9 September 1995 and the subsequent surgery performed on 13 February 1996.
16. Plaintiff has presented competent medical evidence that she was disabled as defined under the Act following the 13 February 1996 surgery. Defendant has not presented evidence that there are suitable jobs available for plaintiff following the surgery, or that plaintiff would be capable of obtaining one, taking into account both her physical and vocational limitations.
17. Participation in a vocational rehabilitation program is reasonably necessary to lessen plaintiff's disability.
 *************
Based upon the findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. On 9 September 1995, plaintiff sustained an injury by accident arising out of and in the course of her employment with the defendant-employer whereby plaintiff sustained a disc herniation at the C5-6 level as a result of a specific traumatic incident in the work assigned. N.C. Gen. Stat. § 97-2(6).
2. Plaintiff's termination from her employment with defendant did not constitute a constructive refusal to accept suitable employment, thereby barring her from further compensation. While plaintiff's termination was for misconduct for which a nondisabled employee would ordinarily have been terminated, plaintiff has presented sufficient evidence to show that her inability to find or hold other employment of any kind at a wage comparable to that earned prior to the injury, is due to the work-related injury she sustained on 9 September 1995.Seagraves v. Austin Co. of Greensboro, 123 N.C. App. 228,472 S.E.2d 397 (1996).
3. Defendant has failed to show that following plaintiff's surgery, there are suitable jobs available for plaintiff or that she is capable of obtaining one, given her physical and vocational limitations; therefore, defendant has failed to rebut the presumption of plaintiff's continuing disability. Burwell v. Winn-Dixie Raleigh, Inc., 114 N.C. App. 69,441 S.E.2d 145 (1994).
4. Plaintiff is entitled to receive temporary total disability compensation at the rate of $204.22 per week for the time periods from 10 to 15 September 1995, 18 to 21 September 1995, 24 to 25 September 1995, 2 October 1995 to 2 November 1995 and from 13 February 1996 to the present and continuing. N.C. Gen. Stat. § 97-29.
5. Plaintiff is entitled to have defendants pay for all medical expenses incurred by plaintiff as a result of her compensable neck injury to the extent that these expenses are reasonably designed to effect a cure, give relief or lessen the period of disability. N.C. Gen. Stat. § 97-25.
 *************
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendant shall pay plaintiff temporary total disability compensation at the rate of $204.22 per week for the time periods from 10 to 15 September 1995, 18 to 21 September 1995, 24 to 25 September 1995, 2 October 1995 to 2 November 1995 and from 13 February 1996 to the present and continuing until further order of the Industrial Commission. The portion of this amount that has accrued shall be paid in a lump sum directly to the plaintiff subject to the attorney's fee approved below.
2. A reasonable attorney's fee in the amount of twenty-five percent of the compensation due plaintiff under paragraph 1 of this AWARD is approved for plaintiff's counsel and shall be paid as follows: twenty-five percent of the compensation due plaintiff shall be deducted and paid directly to plaintiff's counsel. Thereafter, every fourth check shall be sent directly to counsel for the plaintiff.
3. Defendant shall pay all medical expenses incurred by the plaintiff for neck injury arising out of the September 9, 1995 compensable injury by accident.
4. Plaintiff shall make good faith efforts to participate in a vocational program paid for by the defendant. If the Industrial Commission finds that plaintiff has failed to cooperate with this order, then plaintiff's temporary total disability compensation shall be suspended.
5. Defendant shall pay expert witness fees in the amount of $140.00 to Dr. Fred McQueen.
6. Defendant shall pay the costs.
 ************* S/ ________________________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
S/ ______________________ THOMAS J. BOLCH COMMISSIONER
S/ ______________________ RENÉE C. RIGGSBEE COMMISSIONER