* * * * * * * * * * *
The Full Commission reviewed the prior Opinion and Award, based upon the record of the proceedings before the Deputy Commissioner, as supplemented in accordance with plaintiff's motion, and upon the briefs before the Full Commission. Defendants have not shown good grounds to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award. Accordingly, the Full Commission affirms the Opinion and Award of the Deputy Commissioner.
 * * * * * * * * * * *
The Full Commission hereby grants plaintiff's motion to supplement the record to include the August 18, 2005 federal notice of approval of plaintiff's application for employment authorization, reflecting authorization for plaintiff to work legally within the United States during the period of August 6, 2005, through September 9, 2006. The Full Commission finds that the status of plaintiff's employment authorization is a matter directly relevant to the issues currently on appeal, and concludes that the federal notice is an official document not subject to collateral attack and that no purpose would be served by allowing defendants to cross-examine the document. Accordingly, and pursuant to its discretion under Workers' Comp. Rule 701(6), the Full Commission supplements the record on appeal to include the U.S. Citizenship and Immigration Services form I-797, Notice of Action, as submitted by plaintiff.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as a matter of law the following, which were entered into by the parties in a Pre-Trial Agreement and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. An employee-employer relationship existed between plaintiff and defendant-employer at all times relevant to this proceeding.
2. North Carolina Farm Bureau Mutual Insurance Company is the carrier on the risk at all times relevant to this proceeding.
3. The parties were subject to the North Carolina Workers' Compensation Act at all times relevant to this proceeding, defendant-employer employing the requisite number of employees to be bound under the provisions of said Act.
4. Plaintiff's average weekly wage was $278.77, resulting in a compensation rate of $185.86.
5. Plaintiff suffered an injury by accident on February 22, 2002, when he fell from a scaffold.
6. Defendants accepted plaintiff's claim as compensable by filing a Form 60 on or about April 12, 2002.
7. Defendants commenced payment of temporary total disability benefits beginning on February 23, 2002, at a rate of $185.86 per week, and defendants continue to pay TTD benefits at the same compensation rate.
8. On August 19, 2003, Dr. William L. Craig, III, opined that plaintiff had reached maximum medical improvement for the injury which is the subject of this claim. Dr. Craig released plaintiff to return to work on that day with the following permanent work restrictions:
1) maximum floor to waist lifting of 35 pounds;
2) maximum waist to eye level lifting of 28 pounds;
3) maximum bilateral carrying of 25 pounds;
 4) maximum unilateral carrying with left hand of fifteen pounds;
5) maximum pushing of 38 pounds of force; and
6) maximum pulling of 28 pounds of force.
9. Dr. Craig assigned plaintiff a 50% permanent partial impairment rating to his right foot on September 2, 2003, and October 2, 2003.
10. The parties stipulated into evidence I.C. forms as Stipulated Exhibit 1.
11. The parties stipulated into evidence plaintiff's medical records as Stipulated Exhibits 2-9.
 * * * * * * * * * * *
Based upon all the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following additional:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner in this matter, plaintiff was 41 years old. Plaintiff, a native of El Salvador, has never attended school in El Salvador or elsewhere, and is illiterate in all languages. Plaintiff does not speak English. Plaintiff came to the United States approximately six years ago. Prior to arriving in the United States, plaintiff worked as a bakery assistant, building and tending the wood-burning fires in the oven. Plaintiff did not actually bake the bread. Upon his arrival in the United States, plaintiff worked as a brick mason assistant, with duties limited to mixing mortar, erecting scaffolding, and lifting and carrying bricks.
2. On February 22, 2002, plaintiff sustained an admittedly compensable injury by accident when he fell from scaffolding approximately eight feet in the air and landed on his right ankle, fracturing the right ankle. Plaintiff's fracture was severe, involving a fracture of the tibia going into the ankle joint.
3. Immediately following plaintiff's accident, plaintiff was taken to Urgent Care and then sent to the Forsyth Hospital emergency room. Plaintiff was seen in the emergency room on February 22, 2002, the date of his injury, by Dr. Charles Van Taft, an orthopedic surgeon. Dr. Taft was of the opinion, and the Full Commission finds as fact, that plaintiff had a displaced fracture that involved the right ankle, and that the fracture was serious. On February 23, 2002, plaintiff underwent the surgical placement of an external fixation device on his right leg, performed by Dr. Taft.
4. As of the time of plaintiff's injury, plaintiff was unable to work and was written out of work.
5. Plaintiff's workers' compensation claim was accepted by defendants on a Form 60, and defendants began paying temporary total disability compensation at the rate of $185.86 per week.
6. On April 4, 2002, plaintiff's external fixation device was surgically removed by Dr. Taft, and a short leg cast was applied.
7. Although plaintiff underwent physical therapy and used a stimulation unit and a 3D walker, plaintiff continued to experience significant pain in his right leg and ankle and remained out of work. Because plaintiff was not improving, on October 15, 2002, Dr. Taft ordered a tomography of plaintiff's ankle which revealed a non-union of the fracture. On October 24, 2002, plaintiff was referred by Dr. Taft to Dr. William Lewis Craig, III, an orthopedic surgeon, to see if bone grafting was indicated.
8. On October 29, 2002, plaintiff presented to Dr. Craig with a non-union of the distal tibia fracture of his right leg, complaining of significant pain in his right leg and ankle that became worse with walking.
9. On December 9, 2002, plaintiff underwent an ORIF procedure with iliac crest bone grafting of the non-union site of the distal tibia, performed by Dr. Craig. As a part of this procedure, plaintiff had more than ten surgical screws inserted into his ankle.
10. Dr. Craig was of the opinion, and the Full Commission finds as fact, that plaintiff's injury was very difficult to treat because it involved a fracture of the lower part of the leg such that the break went into the ankle joint. In addition, in that type of fracture, the joint will inevitably develop arthritis. In plaintiff's case, it will be very difficult to determine which portions of plaintiff's pain are attributable to arthritis and which portions are attributable to the hardware.
11. On May 16, 2003, Dr. Craig performed the surgical removal of a particularly painful screw from plaintiff's leg.
12. Plaintiff was written out of work by Dr. Craig through June 26, 2003. Plaintiff was entered in a work hardening program on May 29, 2003, and was released to light duty work from June 27, 2003 through August 19, 2003.
13. Prior to plaintiff's final visit with Dr. Craig on August 19, 2003, plaintiff underwent a functional capacity evaluation on Dr. Craig's orders to assess appropriate permanent restrictions. As of September 2, 2003, Dr. Craig was of the opinion, and the Full Commission finds as fact, that plaintiff had reached maximum medical improvement and retained a 50% permanent partial impairment of the right foot. Dr. Craig released plaintiff with the following permanent work restrictions: maximum floor to waist lifting of 35 pounds, waist to eye level of 28 pounds, bilateral carrying of 25 pounds, unilateral carrying with left hand 15 pounds, pushing of 38 pounds, and pulling of 28 pounds.
14. As of September 2, 2003, Dr. Craig was of the opinion, and the Full Commission finds as fact, that plaintiff will have arthritis, directly related to the compensable injury, which will worsen for the rest of his life and, as a result thereof, plaintiff will need pain medication and injections. Dr. Craig was also of the opinion, and the Full Commission further finds as fact, that plaintiff is currently a candidate for an ankle fusion surgery, and will continue to be a candidate in the future.
15. Finally, Dr. Craig was of the opinion, and the Full Commission finds as fact, that as of September 2, 2003, plaintiff was able to do some work, but that plaintiff was physically unable to return to the job he was performing at the time of his compensable injury.
16. Dr. Taft agreed with Dr. Craig regarding the fact that plaintiff is at maximum medical improvement, that plaintiff retains a 50% permanent partial impairment to the right foot, and that plaintiff will require future treatment of his foot and ankle including fusion of the ankle.
17. Both Drs. Craig and Taft were of the opinion, and the Full Commission finds as fact, that plaintiff's ankle condition, including the arthritis, is a direct and proximate result of plaintiff's compensable injury.
18. Both Drs. Craig and Taft indicated that plaintiff was difficult to communicate with because of his inability to speak English.
19. Plaintiff has not returned to employment since his February 22, 2002, compensable injury.
20. A video surveillance taken by defendants of plaintiff reveals a total of 30 minutes and 15 seconds recorded over ten days of surveillance. Throughout the videotape, plaintiff walks with an obvious limp. The video reveals plaintiff performing very few activities, none of which in any way exceed his restrictions.
21. Defendants had a labor market survey prepared by Melanie K. Marshall, a certified rehabilitation counselor. Ms. Marshall was initially asked to perform the labor market survey without being informed of plaintiff's illiteracy, his inability to speak English, and his limited work history. After she was informed of this information, she changed the labor market survey and it was reduced to five positions. However, none of the positions in the survey indicate whether English is required, whether the ability to read and/or write is necessary, and how much education is necessary. Ms. Marshall further assumed that plaintiff had been a "brick mason"; however, plaintiff had in actuality been a brick mason assistant, a position that required only mixing mortar, erecting scaffolding, and hauling materials. In fact, one of the positions identified by Ms. Marshall was a security position which required answering the phone. As plaintiff does not speak English, the Full Commission finds it highly unlikely that plaintiff is actually qualified for that job. Accordingly, the Full Commission accords little weight to Ms. Marshall's labor market survey.
22. Defendants also had a labor market survey performed by Carlos Encinas, Ph.D. Mr. Encinas also prepared his labor market survey without taking into account plaintiff's lack of education, his inability to speak English, his illiteracy, and his limited work experience. Mr. Encinas never met plaintiff, and in fact repeatedly and incorrectly referred to plaintiff as being from "Mexico," whereas plaintiff is from El Salvador. Accordingly, the Full Commission likewise accords little weight to Dr. Encinas's labor market survey.
23. The Full Commission finds that, as of August 6, 2005, plaintiff is legally permitted to work in this country. Furthermore, and regardless of the lack of clarity concerning plaintiff's legal work status between September 2, 2003, and August 6, 2005, the Full Commission finds that factors other than plaintiff's legal work status have kept plaintiff from becoming employed.
24. Defendants make much of certain discrepancies in plaintiff's form-filings, statements, and other documents. From the totality of the evidence, the Full Commission is convinced of plaintiff's credibility. Plaintiff is illiterate and uneducated and has difficulty understanding questions and procedures, and these circumstances more than explain any inconsistencies.
25. As a direct and proximate result of plaintiff's admittedly compensable injury to his right leg and ankle, plaintiff has been unable to work since February 22, 2002, and continues to be unable to work or earn wages with defendant-employer or any other employer.
26. Plaintiff is unable to work due to the pain and impairment of his right leg, his inability to speak English, his lack of education, his illiteracy in all languages, and his work history of manual labor and unskilled work.
27. Plaintiff's inability to work following his reaching of maximum medical improvement on September 2, 2003, is not a result of his allegedly illegal work status, but is a result of pain and physical limitations caused by his compensable injury, his inability to speak English, his lack of education, his illiteracy in all languages, and his work history of heavy, manual, unskilled labor.
30. There is a substantial likelihood that plaintiff will require future medical treatment for his compensable injury.
 * * * * * * * * * * *
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained an injury by accident arising out of and in the course of his employment on February 22, 2002. N.C. Gen. Stat. § 97-2(6).
3. Plaintiff is entitled to have defendant pay for medical expenses incurred or to be incurred as a result of the compensable injury as may be required to provide relief, effect a cure, or lessen the period of disability, including but not limited to management of pain medications, injections, and surgery. N.C. Gen. Stat. § 97-2(19).
2. As a result of the compensable injury, plaintiff is entitled to temporary total disability compensation at the rate of $185.86 per week for the period beginning February 22, 2002, and continuing until plaintiff's period of disability has ended. N.C. Gen. Stat. § 97-29.
3. Defendants have failed produce evidence sufficient to overcome plaintiff's presumption of continuing disability underBurwell v. Winn-Dixie Raleigh, Inc., 114 N.C.App. 69,441 S.E.2d 145 (1994). Specifically, defendants have failed to meet their burden of showing that suitable jobs exist that plaintiff "is capable of performing considering his age, education, physical limitations, vocational skills, and experience." Id.
at 73, 441 S.E.2d at 149.
4. Because defendants have failed to overcome plaintiff's presumption of continuing disability, the issue of plaintiff's legal work status between September 2, 2003, and August 6, 2005, is immaterial:
 [I]t is the employer's burden to produce sufficient evidence that there are suitable jobs plaintiff is capable of getting, "but for" his illegal alien status. . . . However, we reiterate that the employee's illegal alien status is the last step for consideration. An employer still has the burden of returning the employee to a state where "but for" the illegal status, the employee could obtain employment.
Gayton v. Gage Carolina Metals Inc., 149 N.C.App. 346, 351,560 S.E.2d 870, 874 (2002).
 * * * * * * * * * * *
Based upon the foregoing Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay temporary total disability compensation to plaintiff at the rate of $185.86 per week from February 22, 2002 and continuing until further Order of the Commission. This amount is subject to an attorney's fee as contained in Paragraph 2.
2. A reasonable attorney's fee in the amount of 25% of the compensation benefits awarded plaintiff under Paragraph 1 of this Award is approved for plaintiff's counsel and shall be paid by defendants by deducting from the sums owed plaintiff and paying every fourth check to plaintiff's counsel.
3. Defendants shall pay all medical expenses incurred or to be incurred as a result of plaintiff's compensable injury, including but not limited to pain medication management, injections, and surgery, as long as the same are reasonable designed to effect a cure, provide relief, or lessen plaintiff's period of disability.
4. Defendants shall pay the costs, including an expert witness fee in the amount of $300.00 to Dr. Taft.
This __ day of February, 2006.
 S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
 S/_______________ BUCK LATTIMORE CHAIRMAN
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER