***********
The Full Commission reviewed the prior Opinion and Award based upon the record of the proceedings before the Deputy Commissioner and the briefs and arguments of the parties before the Full Commission. Plaintiff has not shown good grounds to reconsider the evidence, and the Full Commission affirms with modifications the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds that the parties did not enter into formal pre-hearing stipulations at the hearing before the Deputy Commissioner, as Plaintiff is pro se.
 ************
The following were marked and received into evidence by the Deputy Commissioner as:
 EXHIBITS *Page 2 
1. Stipulated Exhibit Number 1, Industrial Commission Forms Filings, Medical Records, Medical Case Manager and Vocational Manager Reports, Certified Driving Record and Discovery Responses
2. Plaintiff's Exhibit Number 1, Statement from Psychiatrist
3. Plaintiff's Exhibit Number 2, Labor Correspondence
4. Plaintiff's Exhibit Number 3, Correspondence from Plaintiff's Former Counsel of Record to Defendant.
 *********** EVIDENTIARY ISSUES
Following the Notice of Appeal to the Full Commission, Plaintiff filed a Form 44 on April 1, 2011, with additional medical records attached to her Form 44. Defendant filed an objection to the additional medical records. The Full Commission, it its discretion, DENIES the admittance of the additional medical records into the record of evidence.
On July 15, 2011, Defendant filed a Motion to Dismiss Plaintiff's claim for failure to comply with a discovery order. The Full Commission, in its discretion, DENIES Defendant's Motion to Dismiss Plaintiff's claim.
On July 18, 2011, at the hearing before the Full Commission, Defendant objected to Plaintiff giving an oral argument, citing as grounds that Plaintiff did not file a brief. The Full Commission, in its discretion, DENIES Defendant's motion and allowed Plaintiff to present an oral argument before the Full Commission.
 ***********
Based upon the preponderance of the evidence of the record, the Full Commission makes the following: *Page 3 
 FINDINGS OF FACT
1. At the time of the injury giving rise to this claim, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. At such time, an employment relationship existed between Plaintiff and Defendant-Employer.
3. At all relevant times, Defendant-Employer was a duly-qualified Self-Insured.
4. Plaintiff is a high school graduate. She has taken courses in business administration and office management, but does not hold any certifications.
5. Plaintiff's prior work experience includes work at a cellular call center, an orderly in a hospital, and a legal receptionist. Her primary past work experience has been in the clerical field.
6. On September 8, 2007, Plaintiff sustained an injury by accident arising out of and in the course of her employment with Defendant-Employer when she slipped and fell on a grape injuring her right ankle and right shoulder.
7 On October 22, 2007, Defendant acknowledged Plaintiff's right to compensation, without prejudice by filing a Form 63. The Form 63, which is in agreement with Plaintiff's testimony before the Deputy Commissioner and the Form 18 filed on December 3, 2007, indicates that Plaintiff's average weekly wages on September 8, 2007, were $420.00.
8. On October 26, 2007, Plaintiff presented to Dr. James Flanagan at Cape Fear Orthopaedic Clinic with increasing problems with pain in her right arm over the past month. Dr. Flanagan ordered nerve conduction studies of the right upper extremity.
9. Plaintiff continued to treat with Dr. Flanagan. On November 27, 2007, Dr. Flanagan released Plaintiff to return to work with no use of the right arm. On December 27, 2007, *Page 4 
Dr. Flanagan referred Plaintiff to Dr. David Kishbaugh for pain management and trigger point injections in the trapezius where she was having a lot of muscle spasms. He anticipated Plaintiff's condition would improve without surgical intervention. Dr. Flanagan continued Plaintiff's work restrictions of no right arm use.
10. On March 27, 2008, Plaintiff presented to Dr. Kishbaugh upon the referral of Dr. Flanagan. Dr. Kishbaugh diagnosed Plaintiff with right shoulder and scapular pain associated with her work-related injury. He recommended "an aggressive program of trigger point injections and continuing home exercise program of stretching her periscapular muscles." Dr. Kishbaugh assigned work restrictions to remain in effect until May 31, 2008 of no lifting greater than 5 pounds, no overhead work, no repetitive rotation and/or side bending, no stooping/squatting allowed and no repetitive lifting/gripping use of the right arm.
11. On June 19, 2008, Dr. Kishbaugh assigned work restrictions of no lifting greater than 5 pounds, no overhead work and recommended return to work 4 hours per day for a maximum of 4 days per week with 10-minute break every hour. On July 10, 2008, Dr. Kishpaugh revised Plaintiff's work restrictions to maximum lifting of 10 pounds per day, limited overhead activities and limited repetitive twisting with a 10-minute rest break every hour. On August 7, 2008, Dr. Kishbaugh recommended a trial return to work with a progressive work schedule gradually increasing from part-time to a full return to work at 8 hours per day, 5 days per week.
12. On September 16, 2008, Dr. Kishbaugh released Plaintiff at maximum medical improvement and assigned a 6% permanent partial disability rating to the right upper extremity. He also assigned permanent work restrictions of no lifting greater than 15 pounds and to avoid overhead lifting with right arm. *Page 5 
13. On May 7, 2009, Dr. Kishbaugh referred Plaintiff for evaluation of anxiety and depression. On June 9, 2009, Plaintiff presented to Carolina Psychiatry pursuant to the psychiatric referral. On March 3, 2009, Dr. Kishbaugh completed a Workers' Compensation Medical Status Questionnaire in which he opined that Plaintiff's depression is a "medical conditions that [is] affected/exacerbated by the injury or condition."
14. Following her release with permanent work restrictions, Plaintiff was provided vocational rehabilitation services. On July 4, 2009, Plaintiff returned to work as a sales associate with Tar Heel Furniture Gallery with an average weekly wage of $450.00 plus commission. Her job duties as a sales associate included assisting customers as they shopped for merchandise, selling inventory, assisting customers with completing credit applications and completing sales contracts. While employed for Tar Heel Furniture Gallery, Plaintiff only missed one day of work.
15. On August 9, 2009, Tar Heel Furniture Gallery terminated Plaintiff's employment due to misinformation posted on her application and after becoming aware of her past criminal history.
16. Plaintiff contends that part of her job duties at Tar Heel Furniture Gallery required her to lift catalogs, which exceeded her 15-pound lifting restriction. As a result, she needed assistance lifting the catalogs for use with potential customers. Plaintiff testimony before the Deputy Commissioner that she did not inform anyone with Tar Heel Furniture Gallery that she was unable to lift the catalogs. The medical records do not reflect that Plaintiff sought medical attention while she was employed at Tar Heel Furniture Gallery.
17. Gaynelle Lee, the owner of Tar Heel Furniture Gallery, testified before the Deputy Commissioner that Plaintiff never mentioned anything about her shoulder to Ms. Lee and *Page 6 
that Plaintiff was terminated from employment with Tar Heel Furniture Gallery on reasons unrelated to her shoulder injury.
18. Following her termination, Plaintiff worked part-time for Waste Industries from October 12, 2009 to January 29, 2010. Plaintiff testified before the Deputy Commissioner that she worked 40 hours per week at $12.00 per hour, which is an average weekly wage of $480.00. She was terminated after the need for a part-time employee ceased.
19. She has continued to look for employment following her work for Waste Industries. Plaintiff applied for a position at the Commissary at Fort Bragg and clerical jobs at the Cumberland County Health Department. She submitted applications for state government and federal government jobs. She has searched online and the newspaper classified advertisements for administrative assistant, customer service representative and bookkeeping positions, which she deems are within her physical restrictions. As of the date of the hearing before the Deputy Commissioner, Plaintiff had not received any interviews or returned to work for any employer.
20. Based on the preponderance of the evidence of the record, the Full Commission finds that Tar Heel Furniture Gallery terminated Plaintiff for reasons unrelated to her workers' compensation injury.
21. Based on the preponderance of the evidence of the record, the Full Commission finds that since the accident, Plaintiff has been able to find employment with two other employers. The Full Commission further finds that Plaintiff's ability to earn $450.00 plus commission per week at Tar Heel Furniture Gallery and $480.00 per week at Waste Industries is indicative of Plaintiff's earning capacity. The Full Commission further finds that Plaintiff's wage earning capacity is the same as she was receiving at the time of injury in same or any other *Page 7 
employment. While Plaintiff has offered testimony that she has sought employment since her part-time position with Waste Industries, Plaintiff has not presented any evidence that the failure to obtain employment was related to her disability.
22. Based on the preponderance of the evidence of the record and the credible medical evidence of record, the Full Commission finds that Plaintiff's depression was aggravated and exacerbated by the September 8, 2007 injury by accident.
23. Based on the preponderance of the evidence of the record, the Full Commission finds that Plaintiff is entitled to treatment for her depression that would reasonable, necessary and tend to effect a cure, give relief and lessen the period of Plaintiff's disability.
 ***********
Based upon the foregoing Findings of Fact, the Full Commission enters the following:
 CONCLUSIONS OF LAW
1. On September 8, 2007, Plaintiff sustained an injury by accident arising out of and in the course of her employment with Defendant-Employer when she slipped and fell on a grape injuring her right ankle and right shoulder, which resulted in an exacerbation of Plaintiff's depression. N.C. Gen. Stat. § 97-2(6).
2. As a result of her compensable injury, Plaintiff is entitled to receive further medical treatment related to her compensable right shoulder injury and depression that would effect a cure, give relief or lessen her period of disability, subject to the limitations of N.C. Gen. Stat. § 97-25.1. N.C. Gen. Stat. § 97-25.
3. A worker who asserts that [s]he is entitled to permanent total disability compensation has the burden of proving that [s]he is, as result of injury arising out of and in course of his employment, totally unable to earn wages which [s]he was receiving at time of the *Page 8 
injury in same or any other employment. N.C. Gen. Stat. § 97-29; Burwell v. Winn-Dixie Raleigh, Inc.,114 N.C.App. 69, 441 S.E.2d 145, (1994). The evidence establishes that Plaintiff obtained two jobs that are indicative that her wage earning capacity is the same as the wages earned at time of injury.Id.
 ***********
Based upon the foregoing Stipulations, Findings of Fact, and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Defendant shall pay the medical expenses incurred or to be incurred by Plaintiff as a result of her compensable right shoulder injury and depression when bills for the same have been submitted according to proper Industrial Commission procedure.
2. Plaintiff's claim for additional benefits under the Act is HEREBY DENIED.
3. Each side shall bear its own costs.
This the ___ day of August 2011.
 S/_________________ PAMELA T. YOUNG CHAIR
CONCURRING:
 S/____________________ BERNADINE S. BALLANCE COMMISSIONER *Page 9 
S/___________________ CHRISTOPHER SCOTT COMMISSIONER *Page 1