Upon review of all of the competent evidence of record with reference to the errors assigned, and finding no good grounds to receive further evidence or to rehear the parties or their representatives, the Full Commission upon reconsideration of the evidence modifies and affirms the Opinion and Award of the Deputy Commissioner as follows:
***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. All stipulations contained in the Pre-Trial Agreement are received into evidence.
2. The date of the alleged injury which is the subject of this claim is 2 May 1996.
3. Plaintiffs average weekly wage at the time of the injury by accident was $254. 00.
4. An Agreement for Final Compromise Settlement and Release was entered into by the parties on 8 April 1998.
5. An Order Approving Compromise Settlement Agreement was filed on 4 May 1998.
***********
 ADDITIONAL EXHIBITS
1. A 1998 W-2 form was marked as plaintiffs exhibit 1 and received into evidence.
2. Check stubs were marked as plaintiffs exhibit 2 and received into evidence.
3. Ms. Plotts vocational rehabilitation notes were marked as plaintiffs exhibit 3 and received into evidence.
4. Medical records from Dr. Kuzma were marked as plaintiffs exhibit 4 and received into evidence.
5. A termination report was marked as plaintiffs exhibit 5 and received into evidence.
6. A sworn affidavit by Betty Hill was marked as defendants exhibit 1 and received into evidence.
7. A sworn affidavit by Connie Johnson was marked as defendants exhibit 2 and received into evidence.
***********
 JUDICIAL NOTICE
1. The Full Commission takes judicial notice of the contents of the Compromise Settlement and Release entered into by the parties on 8 April 1998 and approved by the Industrial Commission on 4 May 1998.
2. The Full Commission takes judicial notice of the contents of the Form 21 Agreement entered into by the parties on 6 June 1996 and approved by the Industrial Commission on 23 October 1996.
3. The Full Commission takes judicial notice of the contents of the Form 26 Agreement entered into by the parties on 5 May 1997 and approved by the Industrial Commission on 30 September 1997.
***********
Based upon all of the competent evidence adduced from the record, the Full Commission makes the following additional:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was a fifty-seven year old female who had completed the ninth grade. On 2 May 1996, plaintiff sustained a compensable injury to her right arm. Following surgery and post-operative treatment, plaintiff eventually returned to work with restrictions of no lifting greater than 5 pounds and no production work. These restrictions were deemed by plaintiffs treating physician to be permanent.
2. In February 1998, defendant-employer had begun to lay off employees due to a slow down in work orders. During this time period, defendant-employer employed three employees, Jessie Pratt, Angela Shelton, and plaintiff, who were assigned only to pin socks. Jessie Pratt and Angela Shelton were both laid off during February 1998. Sock pinning was not a regular job position with defendant-employer; it existed as a task only at sporadic times during the year, depending on the demand for the product, and constituted a light-duty position. It is not a position that is available within the textile industry.
3. Plaintiff became very concerned that she might be laid off given the slow down in work and the lay off of co-employees during the month of February 1998. During February 1998, plaintiff had a conversation with Human Resources Manager, Connie Johnson, about her employment future with defendant-employer. Ms. Johnson had the actual authority to terminate plaintiff. Ms. Johnson told plaintiff that she could not guarantee her a job, but that she could continue to work as long as there was work available which met her restrictions. At the time this conversation took place, Ms. Johnson was aware that settlement negotiations were proceeding between plaintiff and defendant-carrier.
4. On or about 23 February 1998, Ms. Betty Hill, insurance coordinator for defendant-employer, informed Ms. Plott, plaintiffs rehabilitation nurse, that the sock pinning position was going to be eliminated and that at that time defendant-employer had not decided to what job plaintiff would be reassigned.
5. On 5 March 1998, plaintiffs counsel, Laurie Steagall, expressed concern to Ms. Plott that plaintiffs sock pinning job was going to be eliminated. She told Ms. Plott that she wanted to be informed as to what position plaintiff would be permanently assigned.
6. On 18 March 1998, Ms. Plott reported to plaintiffs treating physician, Dr. Kuzma, that defendant-employer would continue to employ plaintiff as a sock pinner. On or about 20 March 1998, Ms. Plott went to plaintiffs worksite in order to observe the sock pinning position. On that date, Ms. Betty Hill informed Ms. Plott that defendant-employer planned to keep plaintiff performing sock pinning duties.
7. When Ms. Plott reported to Dr. Kuzma that the sock pinning job was a permanent position, she meant that the sock pinning position was a job that the employer planned to continue to employ plaintiff to do as opposed to any other job, rather than that the job itself would always exist. Plaintiff understood that defendant-employer was unwilling to guarantee her a job position. Neither Betty Hill nor Connie Johnson represented to Ms. Plott that the sock pinning position was guaranteed to continue to exist for plaintiff. However, Ms. Hill did tell plaintiff that she would have a job as long as there were socks to pin.
8. On direct examination, Ms. Johnson testified that during late March or early April 1998, plaintiff was moved from pinning socks to wiping down machines. On cross-examination, Ms. Johnson admitted that plaintiff had been employed less than a month in the cleaning position at the time that she was terminated on 21 May 1998. Ms. Johnson reluctantly admitted that the change from the sock pinning job to the cleaning job possibly took place on 23 April 1999.
9. Plaintiff was still employed pinning socks at the time that she entered into the settlement agreement on 8 April 1998.
10. During settlement negotiations between plaintiffs counsel and insurance adjuster Stephanie Steed, plaintiffs counsel expressed concerns to Ms. Steed about plaintiffs continued employment with defendant-employer. Ms. Steed reported to plaintiffs counsel that defendant-employer had conveyed to Ms. Plott that as long as the sock pinning job had socks to pin she had a job. At the time that this conversation took place, defendant-carrier no longer was an insurer for defendant-employer.
11. Plaintiff was induced to enter into a settlement agreement as a result of Ms. Betty Hills representation that plaintiff would have a job as long as there were socks to pin. This statement by Ms. Hill was inaccurate at the time that it was made.
12. Plaintiff was also induced to enter into a settlement agreement as a result of Stephanie Steeds representation to plaintiffs counsel during settlement negotiations that defendant-employer had promised that as long as the sock pinning job had socks to pin, plaintiff would have a job. This representation by defendant-employer conveyed by its agent, Stephanie Steed to plaintiffs counsel, was inaccurate.
13. On 21 May 1998, seventeen days after the Industrial Commission approved a compromise settlement agreement between plaintiff and defendants, defendant-employer terminated plaintiff.
14. On 22 May 1998, plaintiffs counsel confronted Ms. Steed about earlier representations made by Ms. Steed about plaintiffs continued employment with defendant-employer during settlement negotiations. Ms. Steed reiterated that defendant-employer had reported to her that the sock pinning job was a job available to plaintiff and that defendant-employer had had no intention of terminating plaintiff. Either Ms. Johnson or Ms. Hill made this representation to Ms. Steed.
15. At the time that Ms. Hill represented to plaintiff that plaintiff would have a job as long as there were socks to pin, defendant-employer did not intend to live up to that representation.
16. At the time that Ms. Steed represented to plaintiff by and through her counsel that defendant-employer had promised that as long as the sock pinning job had socks to pin, plaintiff would have a job, defendant-employer did not intend to live up to that representation.
17. After plaintiff was terminated, defendant-employer continued to require an employee to pin socks.
18. Based upon the Deputy Commissioners observation of Ms. Johnsons demeanor and the intonation of her voice as well as the timing of her termination of plaintiff, the Deputy Commissioner found Ms. Johnsons testimony that plaintiffs termination was unrelated to the settlement agreement as a mere coincidence and not credible. On that basis, the Deputy Commissioner determined that defendant-employer only intended to provide temporary jobs to plaintiff as long as there was an ongoing workers compensation claim by plaintiff against defendant-employer. The Full Commission hereby adopts the credibility findings of the Deputy Commissioner and the resulting conclusion.
19. The termination of plaintiff while performing the light duty job of pinning socks was directly related to her 2 May 1996 compensable injury by accident.
20. After her termination from defendant-employer, plaintiff engaged in a reasonable job search that resulted in her employment with McDonalds. The evidentiary record is devoid of any evidence as to what date plaintiff began her employment with McDonalds. Plaintiff has earned $5. 25 per hour while employed with McDonalds. During 1998, plaintiff earned $1,302. 42 while employed with McDonalds. From 1 January 1999 through 19 February 1999, plaintiff earned $1,326. 32 while employed at McDonalds. Plaintiffs post-injury average weekly wage during this time period was $186.06.
21. Plaintiffs position at McDonalds requires her to perform duties which are beyond her medical restrictions. She was forced to accept the employment out of necessity; however, the job is not indicative of her wage earning capacity and does not constitute suitable employment for the purpose of rebutting her continuing disability.
22. Plaintiff reached maximum medical improvement with regard to her compensable right arm injury on 18 March 1998.
23. As a result of the 2 May 1996 compensable injury by accident, plaintiff sustained a 15% permanent partial disability to her right arm. However, due to plaintiffs education, age, training, and medical restrictions, finding and obtaining a job within her medical restrictions is for practical purposes, impossible. For this reason, plaintiff is totally disabled.
24. Plaintiff continues to be in need of future medical treatment for her compensable injury.
25. The defense of this claim was not based upon stubborn, unfounded litigiousness.
***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Settlement agreements which have been filed with and approved by the Industrial Commission may be set aside if it appears to the satisfaction of the Commission that there has been error due to fraud, misrepresentation, undue influence or mutual mistake. N.C. Gen. Stat. 97-17.
2. Misrepresentation has two essential elements: (1) the supplying by the defendant of false information, and (2) reliance on the false statement by the plaintiff. See Fulton v. Vickery,73 N.C. App. 382, 388, 326 S.E.2d 354, 358, disc. rev. denied,313 N.C. 599, 332 S.E.2d 178 (1985).
3. The statement by Ms. Hill that plaintiff would have a job as long as there were socks to pin, was a false statement that plaintiff relied upon in entering into the Compromise Settlement Agreement with defendants. The statement by defendant-employer that as long as the sock pinning job had socks to pin, she had a job, was a false statement that plaintiff relied upon in entering into the Compromise Settlement Agreement. Both of these statements satisfy the first element of the Fulton test. Id.
4. Had plaintiff been laid off from her job with defendant-employer without having reached a settlement agreement, she would have been eligible for vocational rehabilitation and temporary total or temporary partial disability until she was able to find another job. Plaintiffs physical restrictions resulting from her compensable injury would have made finding other work within those restrictions practically impossible. By signing the agreement, plaintiff waived any possibility of continuing compensation. Plaintiffs reliance to her detriment upon the promises of defendant-employer satisfies the second element of the Vickery
test. Id.
5. The misrepresentations made by defendant-employer and plaintiffs reliance upon those misrepresentations, empower the Full Commission to set aside the Compromise Settlement Agreement entered into by the parties. Vernon v. Steven L. Mabe Builders,110 N.C. App. 552, 430 S.E.2d 676 (1993).
6. An employer may rebut the presumption of continuing disability through evidence "that suitable jobs are available to the employee and that the employee is capable of getting one, taking into account the employees physical and vocational limitations into account. Franklin v. Broyhill Furniture Industries,123 N.C. App. 200, 206, 472 S.E.2d 382, 386, cert. denied, 344 N.C. 629,477 S.E.2d 39 (1996). "[M]ere proof of a return to work is insufficient to rebut the . . . presumption, because "capacity to earn is the benchmark test of disability. Kisiah v. W.R. KisiahPlumbing, 124 N.C. App. 72, 81, 476 S.E.2d 434, 439 (1996), disc.review denied, 345 N.C. 343, 483 S.E.2d 169 (1997). A "suitable job is defined as that which the claimant is capable of performing considering his age, education, physical limitations, vocational skills, and experience. Burwell v. Winn-Dixie Raleigh,114 N.C. App. 69, 441 S.E.2d 145 (1994). Plaintiffs position at McDonalds does not constitute "suitable employment sufficient to rebut her continuing disability by establishing her capacity to earn. Id.
7. Furthermore, an employer may not rebut the presumption of continuing disability by showing that the employee is capable of earning pre-injury wages in a temporary position, Daughtry v.Metric Construction Co., 115 N.C. App. 354, 358, 446 S.E.2d 590,593, disc. review denied, 338 N.C. 515, 452 S.E.2d 808 (1994), or by creating a position within the employers own company which is "not ordinarily available in the competitive job market, Peoplesv. Cone Mills Corp., 316 N.C. 426, 438, 342 S.E.2d 798, 806
(1986), because such positions do not accurately reflect the employees capacity to earn wages. The job of sock pinning is not a job which is ordinarily available in the competitive market; therefore, it does not establish plaintiffs real earning capacity.Id.
8. Due to her age, education, experience and medical restrictions, plaintiff is deemed totally disabled. N.C. Gen. Stat. 97-29.
9. Upon the setting aside of the Compromise Settlement Agreement and plaintiffs ceasing to work at employment beyond her medical restrictions, plaintiff is entitled to total disability based upon her pre-injury wages, said compensation to continue until it is demonstrated that plaintiff has regained her pre-injury earning capacity. N.C. Gen. Stat. 97-29.
10. Prior to beginning total disability payments to plaintiff, defendants are entitled to recover the $12,500.00 paid to plaintiff in accordance with the Compromise Settlement Agreement, as well as that amount which plaintiff has earned in unsuitable employment since her termination by defendant-employer. N.C. Gen. Stat. 97-29; N.C. Gen. Stat. 97-42.
11. Plaintiff is entitled to have defendants provide for continuing medical treatment which is reasonably necessary to effect a cure, lessen her period of disability, or provide relief from her compensable injury. N.C. Gen. Stat. 97-25.
***********
Based upon the foregoing stipulations, findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Deputy Commissioner Amy Pfeiffers 5 May 1998 Order approving the Compromise Settlement Agreement entered into by the parties on 8 April 1998, is HEREBY SET ASIDE.
2. Defendants shall pay plaintiff compensation for total disability based upon her pre-injury wages. Said payments shall commence upon plaintiffs ceasing her unsuitable employment, and upon defendants recovery of the money paid to plaintiff in accordance with the Compromise Settlement Agreement and a set off equal to the amount of plaintiffs earnings since her termination by defendant-employer.
3. Defendants shall pay for any continuing medical treatment reasonably necessary to effect a cure or lessen plaintiffs period of disability.
4. Plaintiffs counsel is entitled to a reasonable attorneys fee of 25% of plaintiffs compensation. Upon commencement of payment of the award contained in paragraph 2, every fourth payment shall be made directly to plaintiffs counsel.
5. Defendants shall pay the costs.
***********
This the ___ day of June, 2000.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/_______________ DIANNE C. SELLERS COMMISSIONER
S/_____________ THOMAS J. BOLCH COMMISSIONER