***********
Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to receive further evidence or to rehear the parties or their representatives, the Full Commission upon reconsideration of the evidence modifies and affirms the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. An employee-employer relationship existed at the time of the alleged accident.
2. Toastmaster is the employer-defendant and Corporate Claims Management, Inc., was the carrier on the risk on the date of the alleged injury.
3. The parties were subject to the North Carolina Workers' Compensation Act at the time of the alleged accident.
4. Defendant-employer regularly employs three or more employees and is bound by the provisions of the North Carolina Workers' Compensation Act.
5. The Industrial Commission has jurisdiction of the parties and all parties have been properly named in this action.
6. Plaintiff's average weekly wage can be determined from the completed Industrial Commission Form 22 wage chart.
 ***********
Based upon the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 48 years old and a high school graduate. Plaintiff began working for defendant-employer on 29 March 1972 and was earning an average weekly wage of $228.96 as of 5 March 1999, which yields a compensation rate of $152.65.
2. Plaintiff worked on the clock assembly line which required plaintiff to use a nail gun, staple gun, and glue gun. Plaintiff handled approximately 3000 clocks per day depending on the production of her co-workers.
3. Plaintiff developed severe pain in both hands on or about 5 March 1999. She was initially treated by Dr. Frank J. Baniewicz of the Occupational Therapy Section of Scotland Memorial Hospital, who diagnosed plaintiff with carpal tunnel syndrome and prescribed steroids and physical therapy. Plaintiff's job was changed to light duty, making pendulums and putting UPC stickers on clocks. Plaintiff continued to experience pain in her wrists, and following a period of time in which she was required to punch holes out on clock faces, she began to have pain in her thumbs.
4. Plaintiff reported her thumb problems to her supervisor, and on 10 January 2000, defendant-employer sent plaintiff to orthopedic surgeon Dr. Ward Oakley. Dr. Oakley diagnosed plaintiff with right DeQuervain's syndrome and bilateral carpal tunnel syndrome. Defendants accepted plaintiff's claim as compensable on a Form 60 and paid temporary total disability benefits of $152.65 per week based upon an average weekly wage of $228.96, beginning on 26 August 2000 and continuing until plaintiff returned to work.
5. Dr. Oakley did not perform surgery on plaintiff. He administered an injection of the right radial styloid and the carpal tunnel, which provided relief to plaintiff. Following the 10 January 2000 examination, Dr. Oakley indicated that plaintiff could return to work as long as it did not involve any repetitive or strenuous use of the hands. Dr. Oakley was of the opinion that this will be a permanent restriction and even if plaintiff has to undergo carpal tunnel surgery, these restrictions will remain in place. Dr. Oakley treated plaintiff again on 24 July 2000. Plaintiff reported that she was still feeling some pain over the radial styloid part of the right wrist with certain gripping and pinching action, and she still had a positive Phalen's test which was consistent with the diagnosis of carpal tunnel syndrome. Dr. Oakley again treated plaintiff with an injection.
6. In April 2000, plaintiff returned to work for defendant in a different position as an industrial cleaner, which had been approved by Dr. Oakley. Plaintiff's job duties included dusting, cleaning microwaves, vacuuming, sweeping, and wiping down tables. Plaintiff worked in this capacity for two weeks, was sent home for an additional two weeks for reasons not evident in the record, then returned in May 2000. Plaintiff continued as an industrial cleaner on a fulltime basis until she was laid off as part of a company-wide layoff on 25 August 2000, which was plaintiff's last day of work with defendant. Plaintiff testified that she did a good job keeping the plant clean and was able to do the job with less pain in her hands. Plaintiff indicated that the industrial cleaner position allowed her to take breaks if her hands bothered her since she was able to work at her own pace without any production requirements.
7. Following the company-wide layoff on 25 August 2000, defendants reinstated plaintiff's workers' compensation benefits.
8. In January 2001, Mega Force, a temporary employment agency, had employment available in the industrial cleaner position at Toastmaster, due to the employee who had been doing that job leaving to return to school. Plaintiff applied for the job through Mega Force and was offered the job. Plaintiff was scheduled to begin work on 22 February 2001. Plaintiff testified that she planned to return to work until her attorney advised her not to return to work in that position.
9. On 24 January 2001, Dr. Oakley approved the industrial cleaner position with defendant-employer with restrictions of no repetitive or strenuous use of the hands based on a written job description provided by defendants.
10. Plaintiff reported to work on 22 February 2001 accompanied by Stephen Carpenter, who was hired by plaintiff as a vocational consultant. Mr. Carpenter asked to review the job being offered to plaintiff and was refused entry into the plant by defendants. Defendants' refusal was due to having had no prior notice of the request to review the job being offered to plaintiff and the fact that defendant's Human Resources Manager, Lisa Beasley, was not in the office on that date. Plaintiff refused to report to work at that time and the position was filled by another employee.
11. By Order dated 28 March 2001, Deputy Commissioner Hall granted plaintiff's request to videotape the industrial cleaner job being offered by defendant. However, Deputy Commissioner Hall later reconsidered and by Order dated 7 May 2001, vacated the 28 March 2001 Order and allowed defendants to submit a videotape of the industrial cleaner currently employed by defendant. Plaintiff had testified to having previously done the job and indicated she could tell Mr. Carpenter the duties that the job entailed. Due to the contentious nature of this case with regard to both parties, the Deputy Commissioner believed it was best to allow defendants to make the videotape and plaintiff would be able to observe the videotape and object to any part of the videotape she felt was inaccurate. Having viewed the videotapes, heard the testimony of plaintiff regarding the industrial cleaner position, and receiving no objection from plaintiff regarding the videotapes, the Deputy Commissioner found and the Full Commission hereby adopts the finding that the videotapes are an accurate depiction of the industrial cleaner position. The videotapes have been entered into evidence.
12. Dr. Oakley viewed the videotapes and found nothing that required him to change the restrictions he had placed on plaintiff. Dr. Oakley found the industrial cleaner position to be within plaintiff's restrictions.
13. Mr. Carpenter stated that plaintiff is not employable and needs to be retrained. He also stated that the industrial cleaner position was not suitable for plaintiff. However, when questioned regarding retraining, Mr. Carpenter gave no specific area in which he felt plaintiff would benefit from retraining. Mr. Carpenter also stated that he had not done any job searches on behalf of plaintiff.
14. With regard to the industrial cleaner position, the Full Commission places more weight on the opinion of Dr. Oakley and finds plaintiff's refusal of the industrial cleaner position to be unjustified. The industrial cleaner position has not been modified and does not constitute make work. It is a job that plaintiff had previously worked and demonstrates plaintiff's wage earning capacity and ability to compete for wages as an unskilled laborer.
15. Jim Ratliff, vocational rehabilitation consultant with Carolina Case Management, has done job searches and tried to work with plaintiff to return her to the workforce. Plaintiff, along with two other workers, Willa White and Nellie Smith, who have pending workers' compensation claims against Toastmaster and are represented by plaintiff's counsel, Mr. Lindler, wrote very similar letters to Mr. Ratliff indicating they were disappointed in the job leads he had given them. Plaintiff testified that the three of them had gotten together and decided to write Jim Ratliff a letter. Mr. Ratliff testified in his deposition that he asked plaintiff about the complaints in her letter and plaintiff told him that her attorney asked her to write the letter. Plaintiff, plaintiff's counsel, and Mr. Ratliff have not had frank and open cooperation in the rehabilitation process as set forth in the Rules for Utilization of Rehabilitation Professionals. Plaintiff told at least one potential employer that the only reason she was there applying for a job was because rehabilitation was making her fill out applications and that employer is no longer considering plaintiff for employment. Mr. Ratliff received a 15 June 2001 letter from Mr. Lindler which said, "Please allow this letter to advise you that authorization to have contact with the [sic] my client is no longer permitted."
16. Vocational rehabilitation would benefit plaintiff and assist her in returning to competitive employment.
17. Plaintiff unjustifiably refused suitable employment on 22 February 2001, subjecting her to a suspension of compensation.
18. Based upon the greater weight of the evidence, plaintiff is capable of earning wages in some employment and is therefore not permanently and totally disabled.
19. In light of the contentiousness of both parties throughout this case, the Full Commission finds that plaintiff's pursuit of this claim was not unreasonable.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. The job of industrial cleaner offered to plaintiff through Mega Force, a temporary employment agency, constituted suitable employment. The job offered was the same job plaintiff had performed before at defendant-employer's plant. Plaintiff was capable of performing these duties and defendant-employer regularly utilized industrial cleaners.See Burwell v. Winn Dixie Raleigh, 114 N.C. App. 69, 441 S.E.2d 145
(1994).
2. Plaintiff has unjustifiably refused to accept the industrial cleaner job which had been approved by her treating physician as being within her permanent restrictions. Accordingly, defendant is entitled to suspend payment of compensation from 22 February 2001 until such refusal ceases. N.C. Gen. Stat. § 97-32; Franklin v. Broyhill FurnitureInd., 123 N.C. App. 200, 472 S.E.2d 382 (1996).
3. Vocational rehabilitation is appropriate in this case and defendants may continue to conduct vocational rehabilitation. However, due to the breakdown in cooperation between plaintiff, plaintiff's counsel, and Mr. Ratliff, defendants shall utilize a new rehabilitation consultant to conduct vocational rehabilitation. Plaintiff shall comply with reasonable vocational rehabilitation offered by defendants. N.C. Gen. Stat. § 97-25.
4. Defendants are entitled to a credit for all weekly benefits paid since plaintiff's unjustified refusal of suitable employment on 22 February 2001. N.C. Gen. Stat. § 97-42.
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendant is authorized to suspend payment of all compensation to plaintiff as of 22 February 2001. Defendants are entitled to a credit for all weekly benefits paid since 22 February 2001.
2. Plaintiff's claim that she is totally and permanently disabled is hereby DENIED.
3. Plaintiff's claim that defendants should not be allowed to conduct vocational rehabilitation through Carolina Case Management is hereby DENIED.
4. Defendants shall appoint a new rehabilitation consultant to conduct vocational rehabilitation in this case.
5. Plaintiff shall comply with reasonable vocational rehabilitation offered by defendants.
This the ___ day of July, 2002.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/_______________ LAURA K. MAVRETIC COMMISSIONER
 S/____________ BUCK LATTIMORE CHAIRMAN