***********
The Full Commission reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Hall and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award, except for minor modifications. Accordingly, the Full Commission affirms the Opinion and Award of Deputy Commissioner Hall with modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. All parties are properly before the Industrial Commission and the Commission has jurisdiction of the parties and of the subject matter.
2. All parties have been correctly designated, and there is no question as to misjoinder or nonjoinder of parties.
3. The employee, employer, and insurer are subject to the North Carolina Workers' Compensation Act.
4. Plaintiff was employed by Duke University on May 13, 1999.
5. Plaintiff's average weekly wage was $382.34.
6. Medical records consisting of 307 pages are authentic.
7. Plaintiff suffered an injury by accident while engaged in employment with defendant on May 13, 1999.
8. The parties stipulated into evidence a Pre-Trial Agreement.
9. The parties stipulated into evidence a packet of plaintiff's medical records.
10. The parties stipulated into evidence a packet of Industrial Commission Forms.
11. Employee contends the issues to be heard are:
Is the employee incapable of competitive employment as a result of the injuries she suffered on May 13, 1999?
Is the employee presently permanently and totally disabled from competitive employment?
12. Employer contends the issues to be heard are:
Is the employee incapable of seeking employment as a result of her May 13, 1999, compensable injury?
Is the employee permanently and totally disabled as a result of her May 13, 1999, compensable injury?
 ***********
Based upon all the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission finds as fact and concludes as a matter of law the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 52 years old. Plaintiff began employment with defendant as a housekeeper on or about October 4, 1999. Prior to employment with defendant, plaintiff worked for about six years with Strawberry Studios, a photography studio, where she touched-up flawed pictures. She then worked with Compu-Chem Laboratories, a drug testing facility, where she set-up and prepared samples and sent them to the laboratory for testing. Plaintiff left her position with Compu-Chem after about six months for a job with defendant, in the hope of securing a medical claim insurance position for which she was trained and certified.
2. On May 15, 1999, plaintiff sustained injuries to her upper back, shoulders, left ankle, and left knee when she slipped and fell on a wet surface while at work. She was placed out of work at that time and, except for a one-day unsuccessful trial return to work, has not returned to any employment.
3. Plaintiff sought treatment with Duke University Occupational Health and Wellness Services, where she was diagnosed as having a strain of the shoulder, upper back, and left knee, and a sprain of the left ankle. As of October 2, 2001, because of continued complaints of pain, plaintiff had undergone numerous diagnostic testing and evaluations by several physicians under the direction of Dr. Carol Epling of Duke University Employee Occupational Health and Wellness Services.
4. Defendant accepted plaintiff's injury as compensable and began paying disability compensation at the rate of $254.91 based on a finding of an average weekly wage of $382.34.
5. The physicians providing plaintiff's treatments and evaluation included Drs. William Mallon, John Guisto, Carl Basamania, Anna Bettendorf, Allen Friedman, Billy Huh, Wilson, Richardson, and Kori.
6. Plaintiff underwent several steroid injections and, because of continued complaints of discomfort, was referred to Carolina Back Institute on two occasions and to Triangle Orthopedic on one occasion for pain management.
7. Despite plaintiff's continued discomfort, Dr. Mallon, Dr. Friedman, and Dr. Richardson recommended no surgical intervention for her condition while Dr. Dimmig suggested that surgery might provide her some benefit.
8. Dr. Epling referred plaintiff for a second attempt at pain management, this time under the care of Dr. Guisto, a psychiatrist, and Dr. Leslie Phillip, a psychologist with Triangle Orthopedic.
9. On September 30, 1999, Dr. Michael Gwinn of Carolina Back Institute opined, and the Full Commission finds as fact, that plaintiff is capable of performing work activity that does not involve repetitive right shoulder motion, lifting over 15 pounds, or reaching above chest level with the right arm. Dr. Kori opined, and the Full Commission finds as fact, that plaintiff could work within established limitations.
10. On October 2, 2001, Dr. Epling agreed with Drs. Kori and Gwinn and recommended the following permanent restrictions for plaintiff: (1) lifting up to 10 pounds to chest height with both arms; (2) avoid lifting over chest height; (3) avoid activities requiring sustained extension of the arms away from the body; and (4) have the opportunity to change positions frequently.
11. Plaintiff made modest improvement with the Triangle Orthopedic pain program and, with the approval of the treating physicians, defendant assigned Senika Rush of Concentra Managed Care to assist plaintiff with vocational rehabilitation efforts. Plaintiff began complaining of worsening symptoms, and failed to attend some scheduled meetings.
12. In a letter to a legal assistant associated with plaintiff's counsel dated March 18, 2002, Dr. Friedman stated:
 Thank you for your note concerning Patricia Samuels. My present assessment is based on my last visit with Ms. Samuels. At that time it was clear that Ms. Samuels would not be able to resume what you would call competitive employment. The patient's major disability is secondary to her pain. I hope this note is of benefit to you.
13. Dr. Epling disagreed with Dr. Friedman's opinion and was of the opinion that there are jobs that plaintiff can do, provided she was open to looking.
14. Abiding by Dr. Friedman's opinion, plaintiff underwent an evaluation by Dr. Arne Newman, a clinical psychologist, for indication of memory loss. Dr. Newman concluded that plaintiff exhibited no evidence of memory impairment or cognitive and psychiatric deficits.
15. Regarding plaintiff's visit to his office Dr. Newman testified:
 When she arrived in the office, the receptionist notified me that she was on the sofa, and moaning rather loudly, which was disruptive to some of the other clients in the waiting area. She walked extremely slow to my office, it took several minutes to get her there. And when I first met her, her verbalization, initially was, `This is going to be a terrible, terrible, terrible day, I'm not taking my pain medications today.'
Dr. Newman found plaintiff's behavior consistent with her self-reported pain while in his office.
16. However, Dr. Newman went on to testify:
 I did observe her in one other setting. She went to the Chinese restaurant downstairs in the building for lunch. And at that point I observed her twice; once, when I went to get my own lunch; and second, when she was late returning. During the first observation, she was walking to the food bar and was walking with much greater comfort and much more fluently than I had observed her. On the second observation, she was finishing a large plate of food. I think that may be significant, in that, in the morning when I explained the day's events, I told her we would take a lunch break. At that point she said, I have no appetite, I feel nauseous. By lunch she was hungry and went downstairs to eat, had this large plate of food, she was enjoying it quite comfortably, I thought. When she came back to the office, she again, was lying across the sofa and moaning, as I was notified by the receptionist. And she immediately told me that she was very nauseous and was going to throw up. And I thought that was very different than what I observed in the cafeteria.
17. Dr. Newman felt that plaintiff exaggerated her symptoms and formed the opinion that plaintiff was malingering in regard to her memory loss and psychiatric symptoms. Plaintiff's participation in vocational rehabilitation efforts ended following Dr. Friedman's March 18, 2002, letter.
18. August Lawrence of Carolina Back Institute opined that plaintiff was at maximum medical improvement from her May 13, 1999, injuries and gave her permanent partial impairment ratings of two percent to the right shoulder, two percent to the neck, and two percent to the back.
19. Dr. Friedman is of the opinion that plaintiff is not able to perform work due to pain.
20. Dr. Epling is of the opinion that plaintiff can and should return to work. Dr. Epling testified that his recommendations regarding plaintiff returning to work were met with friction from plaintiff.
21. The Full Commission places more weight on the opinions of Dr. Epling and Dr. Newman.
22. Plaintiff testified that she has continued to receive compensation and medical care from defendant. Plaintiff contends that she is not able to return to competitive employment, but the Full Commission finds that plaintiff has not made a reasonable effort to find suitable employment. Plaintiff testified to having received a medical insurance claims certificate that would allow her to do secretarial work, data entry, and different things associated with medical claim filings.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. For a determination of permanent and total disability, the plaintiff has the burden of showing that she is totally unable to earn pre-injury wages in the same or any other employment. Burwell v. Winn-Dixie,114 N.C. App. 69, 441 S.E.2d 145 (1994). The injured employee seeking permanent and total disability benefits must show that she is incapable of earning pre-injury wages in the same employment and/or in any other employment and the incapacity to earn was caused by the compensable injury. Hilliard v. Apex Cabinet Company, 305 N.C. 593, 290 S.E.2d 682
(1982). This burden can be met by the production of medical evidence of an incapacity to work, or evidence of failed reasonable efforts to obtain employment, or evidence that efforts to obtain employment would be futile due to age, experience, and education. Russell v. Lowes ProductDistribution, 108 N.C. App. 762, 425 S.E.2d 454 (1993). Plaintiff in the case sub judice, has failed to meet that burden of proof. The evidence presented is insufficient to show that plaintiff is permanently and totally incapable of working, therefore, her request for a determination of permanent and total disability is DENIED.
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendant shall continue to pay plaintiff temporary total disability compensation until such time as plaintiff returns to work or until further Order of the Commission.
2. A reasonable attorney's fee of 25% of the compensation due plaintiff under paragraph 1 of this Award is approved for plaintiff's counsel and shall be paid directly to plaintiff's counsel in the form of every fourth compensation payment due plaintiff.
3. Plaintiff is hereby ordered to comply with vocational rehabilitation services.
4. Defendant shall pay the costs.
This 23rd day of October 2003.
 S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER