***********
The Full Commission reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Phillips. The appealing party has shown good ground to reconsider the evidence. The Full Commission reverses the Deputy Commissioner's Opinion and Award and enters the following Opinion and Award.
 ***********
The Full Commission finds as facts and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. All parties are properly before the North Carolina Industrial Commission, and the Commission has jurisdiction over the parties and of the subject matter.
2. The parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
3. All parties have been correctly designated, and there is no question as to misjoinder or nonjoinder of parties.
4. An employer/employee relationship existed between the parties, and defendant-employer employed three or more employees.
5. The Carrier on the risk is ESIS.
6. Plaintiff sustained a compensable low back strain on April 26, 2002.
7. Plaintiff's sole issue for determination is whether plaintiff is entitled to temporary total disability benefits from November 15, 2002, and continuing until such time as he is provided with suitable employment.
9. Defendant's sole issue for determination is whether Plaintiff constructively refused suitable employment by accumulating too many disciplinary points resulting in termination for cause, and/or whether Plaintiff has been disabled as a result of his compensable low back strain since his termination.
 ***********
Based upon the credible evidence of record and reasonable inferences drawn therefrom, the Full Commission finds as fact the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 45 years old, his date of birth being December 19, 1967, and was unemployed.
2. Plaintiff was hired on September 18, 2001, by defendant-employer as an order selector. Plaintiff would select goods for a specific order and manually place them on a pallet for distribution. Once an order was completed, plaintiff would repeat the process. He was encouraged to complete this process in a speedy manner.
3. In the early part of April 2002, plaintiff was performing his duties when he felt pain in his lower back. He did not report the incident because he thought that the injury would resolve itself.
4. Plaintiff continued with his normal work activities until April 28, 2002, when he sustained an injury by accident, arising out of and in the course of his employment, while loading a pallet.
5. All documents filed with the Industrial Commission indicate a date of injury as April 26, 2002; however, based upon the plaintiff's testimony and corresponding medical records, the Full Commission finds the true date of injury was April 28, 2002.
6. Plaintiff first reported to Duplin General Hospital on April 28, 2002, where he complained that he had hurt his back earlier in the month and that it had eased off until an injury occurred again while loading groceries on a pallet at work on April 28, 2002.
7. Thereafter, plaintiff received medical treatment from Gateway Physicians, as instructed by his employer. Plaintiff was seen on April 29, 2002 wherein he was returned to light-duty work with defendant-employer.
8. Plaintiff returned to Gateway Physicians on May 21, 2002, where he was referred to physical therapy. Plaintiff was instructed to continue at light-duty work. Plaintiff continued physical therapy and light-duty work until he was referred for an orthopaedic evaluation.
9. On July 25, 2002, plaintiff reported to Goldsboro Orthopaedic Associates, where he was evaluated by Gregory S. Bauer, M.D, an orthopaedic surgeon. Dr. Bauer recommended an MRI scan to further evaluate plaintiff's condition.
10. On August 23, 2002, plaintiff returned to Dr. Bauer, who noted that plaintiff's MRI was negative. Dr. Bauer recommended steroid injections and continued plaintiff's work restrictions of no lifting over twenty pounds.
11. On September 27, 2002, plaintiff aggravated his injury while on light-duty work when performing work outside his restrictions. Plaintiff immediately presented himself to Gateway Physicians and was taken out of work altogether until he could be evaluated by a neurosurgeon.
12. On October 3, 2002, plaintiff presented himself for evaluation with George V. Huffmon, III, M.D., a neurosurgeon. Dr. Huffmon recommended plaintiff be seen at a pain clinic for evaluation and treatment. He returned plaintiff to light-duty work with restrictions of no lifting, pushing, or pulling greater than 20 pounds; no extended bending or stooping; and directed that plaintiff must be able to change positions at least once an hour. Dr. Huffmon further ordered a second MRI for further evaluation.
13. Plaintiff was scheduled to return to Dr. Huffmon on November 11, 2002, at 1:45 p.m., and testified that he gave notice to the defendant-employer prior to the scheduled appointment. However, defendant-employer scheduled the plaintiff to work at 2:00 p.m. on November 11, 2002. On the way to the doctor's appointment on that day, plaintiff contacted Sue Guy, the human resources officer, at 12:30 p.m. to remind her that he would not be in because of his doctor's appointment. Defendants offered no rebuttal testimony on this matter. After review of the records and the testimony presented before the Deputy Commissioner, the Full Commission finds plaintiff's testimony on this issue to be credible.
14. On his way to the November 11, 2002, doctor's appointment, plaintiff was phoned by his girlfriend who informed him that the doctor's appointment had been cancelled. Plaintiff placed a phone call to Mike Sluder, his supervisor, indicating that he was in too much pain to come in to work.
15. Plaintiff was scheduled to be off on November 12, 2002, so he returned to work on November 13, 2002. He worked the entire day on November 13, 2002, and his employer stated nothing regarding his absence on November 11, 2002.
16. On November 14, 2002, plaintiff returned to work and began his normal light-duty work. While on break, plaintiff was approached by his supervisor, Mike Sluder, and was told that he had "pointed out" and that as a result, he was being terminated.
17. Defendant-employer's attendance point system indicated that an employee was terminated after an accumulation of ten points. Points were assessed due to tardiness and absenteeism.
18. On review of the employment records, the Full Commission finds there to be serious inaccuracies as to the number of points accumulated by plaintiff. Defendants' own witness, Ronnie Leonard, had no personal knowledge of the reports and only offered explanations of the usage of the reports. Moreover, he admitted that several reports were inaccurate in the record. The Full Commission finds that plaintiff's point record is too flawed to establish a legitimate justification for his termination. There is insufficient evidence of record from which the Full Commission can find that plaintiff was terminated by defendant-employer for misconduct or any other valid reason. If anything, it appears that the final accumulation of "points" by which plaintiff was terminated was directly related to factors involving his work-related injury.
19. While plaintiff worked light-duty work for defendant-employer, he received temporary partial disability benefits at the rate of $69.22 per week. As of the date of the hearing before the Deputy Commissioner, plaintiff had continued to receive the temporary partial disability checks.
20. Plaintiff filed for unemployment benefits and, through the date of the hearing before the Deputy Commissioner, continued to receive unemployment benefits at the weekly rate of $315.00. Additionally, plaintiff had not returned to work in any capacity for any employer. Plaintiff remained under medical care and continued to receive medical treatment for his admittedly compensable injury by accident. As of the date of the hearing before the Deputy Commissioner, plaintiff had not yet reached maximum medical improvement, and remained under work restrictions.
21. Given plaintiff's age, education, vocational history, and physical restrictions imposed after his admittedly compensable injury by accident, there is insufficient evidence of record from which the Full Commission can find that there are suitable jobs available that plaintiff is capable of obtaining and performing.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained an admittedly compensable injury by accident arising out of and in the course of his employment on 28 April 2002. N.C. Gen. Stat. § 97-2(6).
2. Defendants have failed to prove that plaintiff was terminated for misconduct or fault, unrelated to the compensable injury, for which a non-disabled employee would ordinarily have been terminated. Seagravesv. Austin Co. of Greensboro, 123 N.C. App. 228, 472 S.E.2d 397 (1996).
3. Defendants have failed to prove that there are suitable jobs available that plaintiff is capable of obtaining and performing, given his age, education, vocational history, and physical restrictions imposed after his admittedly compensable injury by accident. Burwell v.Winn-Dixie Raleigh. 114 N.C. App. 69, 441 S.E.2d 145 (1994).
4. As a result of his admittedly compensable injury by accident, plaintiff has been temporarily totally disabled from November 15, 2002, through the present and continuing until further order of the Commission. N.C. Gen. Stat. § 97-29.
5. As a result of his admittedly compensable injury by accident, plaintiff has received medical treatment that has been reasonably necessary to effect a cure, give relief, and/or lessen the period of his disability. N.C. Gen. Stat. §§ 97-2(19) and 97-25. This treatment specifically includes the treatment by Dr. George Huffman, and the Center for Pain Management. Because plaintiff was still under the care of both of these providers and was not at maximum medical improvement at the time of the hearing before the Deputy Commissioner, plaintiff is entitled to have defendants provide him with future medical treatment reasonably necessary to effect a cure, give relief, and/or lessen the period of his disability. Id.
6. Defendants are entitled to a credit for unemployment benefits received by plaintiff. N.C. Gen. Stat. § 97-42.1.
 ***********
Based on the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to the credit for unemployment benefits and the attorney's fee approved below, defendants shall pay to plaintiff temporary total disability benefits at the weekly rate of $474.65, beginning November 15, 2002, and continuing until such time as plaintiff returns to work or until further order of the Industrial Commission. The portion of such compensation that has accrued shall be paid to plaintiff in a lump sum.
2. Defendants shall pay to plaintiff's counsel a reasonable attorney's fee of twenty-five percent (25%) of the compensation paid herein to plaintiff. The portion of such fee that has accrued shall be paid to plaintiff's counsel in a lump sum.
3. Defendants shall provide plaintiff with all related medical treatment that is reasonably necessary to effect a cure, give relief, or lessen the period of his disability, including treatment by plaintiff's treating physician, Dr. Huffmon, and the Center for Pain Management.
4. Defendants shall pay the costs of this proceeding.
This 9th day of September 2004.
 S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
 S/_______________ DIANNE C. SELLERS COMMISSIONER